Filed 2/6/15  In re J.C. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re J.C., a Person Coming Under the Juvenile Court Law. | C068667 |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>J.C.,<br><br>        Defendant and Appellant. | (Super. Ct. No. 68585) |

Seventeen-year-old J.C. was adjudged a ward of the juvenile court after he admitted driving with a blood alcohol level of 0.08 percent or higher.  Because J.C. is an undocumented immigrant,[1] he filed a motion in the juvenile court for an order regarding special immigrant juvenile (SIJ) status eligibility under the federal Immigration and

---

[1] We use the term preferred by the California Supreme Court.  (*In re Garcia* (2014) 58 Cal.4th 440, 446, fn. 1.)

Nationality Act, Title 8 United States Code section 1101(a)(27)(J) (hereafter section 1101(a)(27)(J)). Such eligibility would enable J.C. to petition the federal government for legal permanent residence.

The juvenile court denied the motion, concluding that it could not make the findings required by the Immigration and Nationality Act. The juvenile court said it could not find that J.C. was declared a dependent of the juvenile court, because J.C. was a ward of the juvenile delinquency court. In addition, the juvenile court said it could not find that J.C. was eligible for long-term foster care due to abuse, neglect or abandonment which brought him in front of the court, because although J.C.'s father had abandoned him, J.C.'s mother had been caring for J.C. and was still available to care for him.

On appeal, J.C. contends the juvenile court failed to make the proper findings for SIJ status eligibility.

The juvenile court denied the motion in 2011. Subsequent authorities identify additional factors that should have been considered by the juvenile court. (*Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622 (*Eddie E.*); *Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340 (*Leslie H.*); Code Civ. Proc., § 155.) We will reverse the juvenile court's order denying J.C.'s motion regarding SIJ status eligibility, and remand the matter to the juvenile court for further proceedings.

BACKGROUND

When J.C. drove over the center line of a street into the path of an oncoming police vehicle, the police swerved to avoid a collision and initiated a traffic stop. The police observed that J.C. had red and watery eyes, smelled of alcohol, and was unsteady on his feet. A breath test revealed a blood alcohol level of 0.18. When J.C.'s mother came to pick him up from jail, she produced documentation that he was 17 years old. J.C. was transported to juvenile hall.

2

The district attorney filed a juvenile wardship petition under Welfare and Institutions Code section 602, subdivision (a). J.C. admitted driving with a blood alcohol level of 0.08 percent or higher; other charges were dismissed.

The next day, J.C. filed a motion for an order regarding SIJ status eligibility. The motion said J.C. was born in Mexico and entered the United States unlawfully when he was 13 years old; he came to join his mother, who had been living in the United States and is also an undocumented immigrant. J.C. and his mother are from Oxtotitlan in the State of Guerrero, an area the motion characterizes as "violent and dangerous" because of drug trafficking and drug cartel warfare. J.C.'s father abandoned the family when J.C. was four years old; J.C.'s grandparents are his only relatives in Mexico. Prior to his arrest, J.C. had been working in the fields to help support his family.

The juvenile court characterized J.C.'s motion as one to "grant special immigration status" rather than to make immigration-related findings of fact. After a nonevidentiary hearing on the motion in which both sides presented oral argument, the juvenile court denied the motion. The court explained its ruling as follows:

"THE COURT: The Court is denying the motion for the following reasons: There are three findings the Court has to make, and the Court cannot make any of those findings.

"The first one is that the minor is declared a dependent of the Juvenile Court. In fact[,] this minor is not a dependent of the Juvenile Court. He is a ward of the juvenile delinquency court. I could find no case that said his status as a delinquent under a [Welfare and Institutions Code section] 602 wardship satisfied the dependency requirement for the first fact that the Court has to find, and that's probably because the status as a [Welfare and Institutions Code section] 602 does not provide the child for or make the child eligible for long-term foster care.

"With regard to No. 2, the Court has to find that the minor is eligible for long-term foster care due to abuse, neglect or abandonment which brought him in front of this

3

Court.  The Court cannot make that finding.  The minor has a mother that has been providing for him in this country.  She provided him food, shelter and clothing, although she hasn't presented herself to the Court.[2]  She has been visiting the minor in the Juvenile Hall, and when they made that amendment in 2008, they actually narrowed the amount of minors that could fall under the statute to allow reunification with one parent as being acceptable.  The fact that his father may have abandoned him when he was four years old does not qualify because the mother is still available, *and* also that's not the act that brought him before the Court.  So I cannot show -- or the defense has not shown that the minor is here due to abuse or neglect or abandonment.  He's here because he's created [*sic*] a crime, and with that I don't even get to [the element which requires that it] be in the juvenile's best interests not to return to his country of origin.  In fact[,] he has grandparents that live in that country.  He has someone to provide [for] him there.  So I cannot make any of the findings, and the motion for special immigrants [*sic*] status is denied."

J.C.'s lawyer tried to revisit the issue at the contested dispositional hearing 12 days later, saying that the juvenile court had been "misled either in its own research or by the District Attorney indicating that the code doesn't allow a delinquency judge to consider the matter."  The following discussion ensued:

"THE COURT:  No, that is not what I said.  I have every right to consider the matter and I did, but I didn't deny it just for that.

"[MINOR'S COUNSEL]:  Well, you had initially said that you could find no case that allows you to even do this.

"THE COURT:  Maybe I misspoke.  What I said was I saw no case that the basis for the Court was based on a delinquency matter.

---

**2**  J.C.'s cousin attended the court proceedings.

"[MINOR'S COUNSEL]: Right. And you had -- so my impression of that was that the Court was under the impression that it was not able to consider the [SIJ status] because [J.C.] is a delinquent, instead of a dependent.

"THE COURT: No, that is not --

"[MINOR'S COUNSEL]: And the code doesn't say that.

"THE COURT: That is not what I said. And I didn't deny it on that. He doesn't -- I denied it because he didn't fit the criteria . . . ."

On that same day, the juvenile court issued the disposition order adjudging J.C. a ward of the court for commission of a misdemeanor, and committed J.C. to custody at juvenile hall for 102 days with 102 days of credit, releasing J.C. to his mother's custody under the supervision of the probation department with various terms and conditions of probation. The order included the following handwritten notation: "Court finds minor not fit criteria [*sic*] for Special Immigration Status."

DISCUSSION

J.C. contends the juvenile court failed to make the proper findings for SIJ status eligibility. He claims the juvenile court misunderstood the governing federal law and misinterpreted the applicable criteria for eligibility.

The SIJ statute (section 1101(a)(27)(J)) defines a qualifying juvenile as: "(J) an immigrant who is present in the United States -- [¶] (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with [one] or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality

5

or country of last habitual residence; and [¶] (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . ."

Addressing the first subpart in subsection (i) of section 1101(a)(27)(J), the juvenile court said it could not find that J.C. was declared a dependent of the juvenile court, because J.C. was a ward of the juvenile delinquency court. But the first subpart of subsection (i) of section 1101(a)(27)(J) is phrased in the disjunctive. (*Eddie E., supra*, 223 Cal.App.4th at p. 627.) The subpart goes on to say: "or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States . . . ." (Section 1101(a)(27)(J)(ii).) Because the subpart is phrased in the disjunctive, dependency under Welfare and Institutions Code section 300 is not the only way in which a petitioner could satisfy that subpart. (*Eddie E., supra*, 223 Cal.App.4th at p. 628.) A court could find *either* that an immigrant has been (a) declared dependant on a juvenile court *or* (b) legally committed to, or placed under the custody of a state agency or department or an individual or entity appointed by a state or juvenile court located in the United States. (See *Eddie E., supra*, 223 Cal.App.4th at p. 627.) State courts may make SIJ status eligibility findings " 'whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone.' " (*Leslie H., supra,* 224 Cal.App.4th at p. 349.) Accordingly, the juvenile court in this case must consider whether a finding can be made on the alternative basis articulated in the first subpart of subsection (i) of section 1101(a)(27)(J).

The juvenile court shall also consider whether two additional findings can be made: (1) that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence. (See *Eddie E., supra*, 223

6

Cal.App.4th at pp. 627-628, quoting *In the Matter of Mario S.* (2012) 38 Misc.3d 444 [454 N.Y.S.2d 843].)

The first of these two additional findings is based on the second subpart in subsection (i) of section 1101(a)(27)(J).  Regarding that subpart, the juvenile court included the phrase "eligible for long-term foster care" in its description of the subpart. But as the Court of Appeal explained in *Leslie H.,* " ' "Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment.  Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment." [Citation].' " (*Leslie H., supra,* 224 Cal.App.4th at p. 349, quoting *In the Matter of Mario S., supra,* 454 N.Y.S.2d 843.)

The juvenile court said the fact that J.C.'s father "may have abandoned him when he was four years old does not qualify because the mother is still available . . . ."  But the second subpart in subsection (i) of section 1101(a)(27)(J) is phrased in the disjunctive:  it refers to reunification with "one or both" parents.

A minor who has been abandoned by one parent *may* qualify for SIJ status even if the other parent has not neglected, abused or abandoned him.  (*In the Matter of Karen C.* ( 2013) 111A.D.3d 622 [973 N.Y.S.2d 810]; *Marcelina M.-G. v. Israel S.* (2013)  112 A.D.3d 100 [973 N.Y.S.2d 714].)  The juvenile court, however, is not tasked with determining whether J.C. deserves SIJ status; SIJ status is a federal question for immigration authorities to decide.  (*Leslie H., supra,* 224 Cal.App.4th at p. 351.)  With regard to the second subpart of subsection (i) of section 1101(a)(27)(J), the juvenile court is only tasked with finding whether reunification with one or both parents is not possible because of abuse, neglect, or abandonment.  (*Leslie H., supra,* 224 Cal.App.4th at p. 351.)

The second of the two additional findings -- whether return to his native country would be in J.C.'s best interest -- is based on subsection (ii) of section 1101(a)(27)(J).

7

The juvenile court did not make such a finding, although it mentioned that J.C. has grandparents in Mexico and he "has someone to provide [for] him there." J.C. said in his motion that his Mexican grandparents were elderly and unable to physically or financially care for their land and livestock, that most of his family was in the United States, that J.C. had been in the United States with his mother for several years, and also that his former home was in a part of Mexico that had been ravaged by warfare among rival drug cartels. J.C. submitted nearly 40 pages of news articles reporting recent drug-related violence in his native state of Guerrero. The juvenile court's obligation is to evaluate the evidence and determine whether it can make a finding regarding whether return to his native country would be in J.C.'s best interest. (See *Leslie H., supra,* 224 Cal.App.4th at p. 352 [finding should be tethered to the evidence and based on minor's best interests].)

Thus, additional factors should have been considered by the juvenile court, and we will remand the matter to the juvenile court for further proceedings.[3]

---

[3] A new California statute is consistent with our holding. Code of Civil Procedure section 155 (added by Stats. 2014, ch. 685 (Sen. Bill No. 873) § 1, eff. Sept. 27, 2014) provides in pertinent part:

"(a) A superior court has jurisdiction under California law to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration and Nationality Act (8 U.S.C. Sec. 1101(a)(27)(J) and 8 C.F.R. Sec. 204.11), which includes, but is not limited to, the juvenile, probate, and family court divisions of the superior court. These courts may make the findings necessary to enable a child to petition the United States Citizenship and Immigration Service for classification as a special immigrant juvenile pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code.

"(b)(1) If an order is requested from the superior court making the necessary findings regarding special immigrant juvenile status pursuant to Section 1101(a)(27)(J) of Title 8 of the United States Code, and there is evidence to support those findings, which may consist of, but is not limited to, a declaration by the child who is the subject of the petition, the court shall issue the order, which shall include all of the following findings:

"(A) The child was either of the following:

"(i) Declared a dependent of the court.

DISPOSITION

The juvenile court's order denying J.C.'s motion regarding SIJ status eligibility is reversed, and the matter is remanded to the juvenile court to determine whether J.C. remains within the jurisdiction of the juvenile court and is present in the United States. If J.C. remains within the jurisdiction of the juvenile court and is present in the United States, the juvenile court shall consider whether it can make the following findings:

1. Whether (a) J.C. has been declared dependent on a juvenile court, or (b) a juvenile court has legally committed J.C. to, or placed him under the custody of, an agency or department of a state, or an individual or entity appointed by a state or juvenile court located in the United States.

2. Whether reunification with one or both of J.C.'s parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law.

3. Whether it would not be in J.C.'s best interest to be returned to his or his parent's previous country of nationality or country of last habitual residence.

                                                 MAURO               , J.

I concur:

               NICHOLSON          , Acting P. J

---

  "(ii) Legally committed to, or placed under the custody of, a state agency or department, or an individual or entity appointed by the court. The court shall indicate the date on which the dependency, commitment, or custody was ordered.

  "(B) That reunification of the child with one or both of the child's parents was determined not to be viable because of abuse, neglect, abandonment, or a similar basis pursuant to California law. The court shall indicate the date on which reunification was determined not to be viable.

  "(C) That it is not in the best interest of the child to be returned to the child's, or his or her parent's, previous country of nationality or country of last habitual residence."

MURRAY, J.

I respectfully dissent.

The majority remands this case, directing the juvenile court to make all of the required findings under the Special Immigrant Juvenile (SIJ) statute. (8 U.S.C. § 1101(a)(27)(J)(i).) While I agree that the juvenile court erred by not making those findings, I would conclude the error was harmless. On the record before us, no court order was made that would qualify the minor for SIJ status. In my view, a grant of juvenile probation, in and of itself, is not a predicate court order for SIJ purposes because it does not fall within the SIJ alternative requirement for a commitment or custody order. Moreover, in my view, SIJ status is available only for a minor who becomes a "dependent" of the juvenile court under Welfare and Institutions Code section 300[1] or for whom the court makes a commitment or custody order *because* the minor has been the victim of abuse, neglect, abandonment, or a similar reason, and who meets the other criteria of the SIJ statute. Consequently, while a minor who has been adjudged a ward in the delinquency court could qualify, SIJ status is not available for a delinquent minor who has not been the subject of a commitment or placement for reasons of parental abuse, neglect, abandonment, or a similar reason under California law.

Because the record before us shows that the minor is not the subject of a qualifying court order, we need not remand for the purpose of having the juvenile court make that finding and the other SIJ findings. I would affirm.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

1

## I. The Juvenile Court's Ruling[2]

The juvenile court denied the petition because the minor did not "fit the criteria." The problem, as I discuss *post*, is that the juvenile court considered old criteria outlined in a federal regulation that had not been updated after the most recent amendments to the SIJ statute. However, the juvenile court did make a finding that the father's abandonment of the minor was "not the act that brought him before the Court." This finding was pertinent to the extent that no commitment or custody orders had been made because of the asserted abandonment or because the minor had been abused or neglected, and as I discuss *post*, the court's other factual findings support the conclusion that no such order is appropriate here.

## II. The Current SIJ Statute and the Non-Applicability of the Current Regulation

There are many undocumented minors in this country who are in need of protection because they have been abused, neglected, or abandoned by their parents or have been the victims of human trafficking. The SIJ statute seeks to provide that protection.

---

[2] I note that the minor submitted no affidavits or declarations and produced no testimony or other admissible evidence. All of the "facts" the minor relies upon here come from unsworn statements set forth by his attorney in the minor's memorandum of points and authorities supporting his motion and in the newspaper articles attached to the memorandum. In my view, the juvenile court would have been well within its discretion to reject the unsworn statements submitted by counsel. However, the People raised no objection to this evidentiary presentation and the juvenile court appeared to credit the factual assertions made in the motion. I do not read the majority's opinion to sanction the lack of evidentiary support for the minor's petition here. The majority expresses no opinion about the admissibility of any of the factual assertions proffered by the minor had there been an objection, including the assertions that the father abandoned the minor in Mexico and that returning to the home of his grandparents in Mexico would be unsafe. If there was somehow a doubt about the need to present *evidence* supporting the motion, Code of Civil Procedure section 155, subdivision (b)(1), now makes it clear that the juvenile court can make the required findings only if there is "*evidence* to support the findings." (Italics added; see maj. opn., *ante*, p. 8, fn. 3.)

Congress last amended the SIJ statute in 2008. The current statute provides in pertinent part as follows: "The term 'special immigrant' means -- [¶]…[¶] (J) an immigrant who is present in the United States -- [¶] (i) who *has been* declared dependent on a juvenile court located in the United States *or* whom such a court *has legally committed to, or placed under the custody* of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, *and* whose reunification with [one] or both of the immigrant's parents is not viable *due to abuse, neglect, abandonment, or a similar basis* found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."[3] (8 U.S.C. § 1101(a)(27)(J)(i), (ii), italics added.)

As I read this statutory language, a state juvenile court must make findings related to two separate requirements: (1) reunification non-viability; and (2) best interests of the minor. The first requirement, the reunification non-viability requirement set forth in title 8 of the United States Code section 1101(a)(27)(J)(i) has two interrelated subparts. The first subpart relates to qualifying orders issued by the court.[4] The existence of such an order is a predicate to SIJ eligibility. Without a qualifying order, the minor cannot be eligible and the other SIJ findings need not be made.

---

[3] The juvenile court here first stated that it found no need to reach the determination of whether it would not be in the minor's best interest to return to his country of origin, but then observed that he had grandparents who resided in Mexico and could provide for him. This observation by the juvenile court cannot be read as a finding on the best interest requirement, but there is no need to reach the issue here. The resolution of this appeal turns on the nonexistence of a qualifying predicate court order, which is part of the reunification non-viability requirement.

[4] For convenience, I refer to this as the "court order requirement."

3

The language concerning the court order requirement is phrased in the disjunctive, indicating the designation of different qualifying orders as separate alternative options. (*Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 627 (*Eddie E.*).) The court must find the minor has either been: (1) declared a dependent of a juvenile court; *or* (2) legally committed to, or placed under the custody of an agency or department of a state by a state or juvenile court; *or* (3) placed under the custody of an individual or entity appointed by a state or juvenile court. (8 U.S.C. § 1101(a)(27)(J)(i).)[5] Importantly, the statute requires that the order actually be in existence, not that there is the potential for such an order. The statutory language requires the juvenile court to determine whether the minor *has been* declared a dependent or whether the juvenile court *has* made a commitment or custody order. The juvenile court is not obligated by the SIJ statute to make such an order, even if there is evidence the minor has been abused, neglected or abandoned.[6] The second subpart of the reunification non-viability requirement in title 8 of the United States Code section 1101(a)(27)(J)(i) is a determination by the juvenile court that the minor's "reunification with [one] or both of the immigrant's parents is not viable *due to abuse, neglect, abandonment, or similar basis* found under State law." (8 U.S.C. § 1101(a)(27)(J)(i), italics added.)

_____

[5] For convenience, I refer to the first option as the "dependency option" and the second and third options as the "commitment or custody options."

[6] Consistent with the federal statute, recently enacted Code of Civil Procedure section 155, subdivision (b)(1)(A), provides that the findings the court shall make relate to whether "[t]he child *was*…[¶]…[¶] [l]egally committed to, or placed under the custody of, a state agency or department, or an individual or entity appointed by the court." (Italics added.) That same provision goes on to state, "The court shall indicate the date on which the dependency, commitment, or custody *was ordered*." (Italics added.) Code of Civil Procedure section 155 does not require the court to make commitment or custody orders. That duty is governed by other statutory provisions; pertinent provisions are discussed, *post*.

4

Title 8 of the United States Code section 1103(a)(1) and (a)(3), authorizes the Secretary of Homeland Security to establish regulations to implement the SIJ statute, subject to controlling determinations by the Attorney General of the United States on questions of law. The People note on appeal that title 8 of the Code of Federal Regulations part 204.11 (2014) is the federal regulation implementing the SIJ statute. Consistent with the juvenile court's erroneous reliance on the regulation, the People contend on appeal the minor had to meet the requirements of the regulation to be eligible for SIJ status, a contention not directly addressed by the majority. As I explain to avoid further confusion on remand, the contention is meritless.

The current version of the regulation became effective in 2009, a year after the most recent statutory amendments to the SIJ statute, but does not incorporate the changes made in the 2008 amendments. (*Leslie H*. *v. Superior Court* (2014) 224 Cal.App.4th 340, 348 (*Leslie H*.).) Revisions to title 8 of the Code of Federal Regulations part 204.11 related to the 2008 amendments have yet to be finalized. (See 76 Fed.Reg. 54978 (Sept. 6, 2011).)[7] The 2009 version of the regulation (reported in the 2014 Code of Federal Regulations), which both parties referred to in the juvenile court and on appeal, provides that an alien minor is eligible for SIJS if the minor:

"(1) Is under twenty-one years of age;

"(2) Is unmarried;

---

[7] See also Special Immigrant Juvenile Petitions, UA and Regulatory Plan Information and docket details for docket No. USCIS-2009-0004 (Sept. 6, 2011) <http://www.regulations.gov/> (as of Feb. 6, 2015).

"(3) *Has been declared dependent upon a juvenile court*[8] *located in the United States in accordance with state law governing such declarations of dependency*, while the alien was in the United States and under the jurisdiction of the court;

"(4) *Has been deemed eligible by the juvenile court for long-term foster care*;

"(5) *Continues to be dependent upon the juvenile court and eligible for long-term foster care*, such declaration, dependency or eligibility not having been vacated, terminated, or otherwise ended; and

"(6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents; or [¶] (7) [Filed a petition before June 1, 1994]." (8 C.F.R. § 204.11(c) (2014), italics added.)

The regulation is clearly inconsistent with the 2008 version of the statute. When a federal regulation conflicts with a federal statute, the federal statute controls. (*Chevron, U.S.A., Inc. v. NRDC, Inc.* (1984) 467 U.S. 837, 842-843 [81 L.Ed.2d 694] ["If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."].) Accordingly, where there is conflict between the SIJ statute and current regulation, a court's focus must be on the language of the statute. (*Leslie H.*, *supra*, 224 Cal.App.4th at pp. 348-349.) Consequently, the juvenile court should have disregarded the requirements of the regulation that are inconsistent with the statute, and the People's argument on appeal that the minor was required to show he was a dependent of the juvenile court and eligible for long-term foster care is without merit.

---

**8** The regulation defines "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." (8 C.F.R. § 204.11(a) (2014).)

6

### III. Analysis

The minor insists he is eligible for SIJ status essentially because he was placed on supervised probation. He asserts that "after serving time in Juvenile Hall, he was released to his mother's custody, but *under the control of the probation department*. [The minor] was, therefore, declared a dependent by a juvenile court and he was ordered committed to the custody of the probation department. Accordingly, [the minor] met the first criteria for SIJ[] [status]." The record reflects that the minor was placed under the "supervision" of the probation department under typical terms and conditions of probation for juvenile driving under the influence[9] when he was released to his mother's

---

[9] The terms and conditions of probation were as follows: obey all laws; obey the reasonable directions of his parents, school officials and the probation department; attend school regularly and not be suspended or excluded for misconduct; do not use alcohol or controlled substances; be in his residence between 8:00 p.m. and 6:00 a.m. each night unless he is accompanied by a parent, guardian or other responsible adult having care or custody of the minor; keep the probation officer informed at all times of his correct living and mailing address; obey all orders of the Juvenile Court; obtain a GED or high school diploma; do not drive a motor vehicle unless he is properly licensed and insured; along with his parents, seek and engage in any program of counseling and/or education until otherwise notified by the probation officer or released by the counseling and/or education agency; complete a substance abuse counseling program as required by the Department of Motor Vehicles and provide access to information to verify progress in the program; participate in a program of substance abuse detection and treatment as directed by the probation department; do not possess alcohol or controlled substances or associate with people known to use, possess, or traffic in these substances or frequent places where such substances are unlawfully used; do not associate with anyone the minor knows to be on parole or probation; submit to photographing as directed by the probation department or the police; do not own, possess or use or knowingly associate with anyone who has a firearm, or and deadly or dangerous weapon or any replica weapon of any kind, including a bb gun or an air pellet gun; and submit to search by the police or the probation department without probable cause or warrant of his person, place of residence, place he is temporarily residing, vehicle registered to him, vehicle he is driving, his personal effects and any area over which he has control.

The court also ordered that the parents pay various fines and fees; participate in the minor's counseling program; comply with the probation department and the Juvenile

7

custody. I disagree with the notion that the order of supervised probation imposed on the minor here is a qualifying predicate SIJ order and explain my reasoning, *post*.

## A. Declaration of Dependency

In its dispositional order, the majority directs the juvenile court on remand to determine whether the minor had been declared a dependent on the juvenile court. (8 U.S.C. § 1101(a)(27)(J)(i).) (Maj. opn., *ante*, at p. 9.) But the record clearly demonstrates that the minor was not declared a dependent of the court. The record further demonstrates that the juvenile court expressly made this finding and the finding is supported by substantial evidence. As the juvenile court noted, it took jurisdiction over the minor as a delinquent only. The minor, therefore, did not establish that he qualified for SIJ status consideration as a "dependent" of the juvenile court under California law.

Yet the majority's remand order directs the juvenile court to do something it has already done and, thus, our order may imply that the juvenile court's previous ruling was in error. In my view, based on the record before the juvenile court at the time, its ruling regarding dependency was not in error. The minor clearly was not a dependent of the juvenile court.

## B. Commitment or Custody Orders

The majority directs the juvenile court on remand to determine whether "a juvenile court has legally committed [the minor] to, or placed him under the custody of, an agency or department of a state, or an individual or entity appointed by a state or juvenile court located in the United States." (Maj. opn., *ante*, at p. 9.) The question presented by the minor in this appeal, however, is whether an order of supervised probation qualifies as

Court; and make efforts to obtain appropriate educational services for the minor to "avoid the need for out of home placement."

8

such an order.[10]  The majority does not answer that question, but in my view, the answer is "no."

The plain language of the SIJ statute is:  "legally committed to, or placed under the custody of…."  (8 U.S.C. § 1101(a)(27)(J)(i).)  Nothing in the express language of the statute or its history leads to the conclusion that Congress intended to include supervised probation with standard terms and conditions for driving under the influence as an order qualifying a minor for SIJ status.

The majority quotes the observation made by the court in *Leslie H*. -- "State courts may make SIJ status eligibility findings ' "*whenever* jurisdiction *can be* exercised under state law to make *care* and custody determinations, and are no longer confined to child protection proceedings alone." ' " (Maj. opn., *ante*, at p. 6, italics added.)  I, of course, do not disagree that the juvenile delinquency court has both the authority and the duty to make the required SIJ findings when asked to do so, but to the extent that the quote from *Leslie H*. is read for the proposition that a grant of probation for a ward of the delinquency court in and of itself qualifies as a SIJ order, I disagree with that overly-broad view for two reasons.

First, as I have noted, the plain language of the statute requires a SIJ eligibility finding only when the juvenile court determines there "has been" a declaration of dependency or the court "has" made a commitment or custody order.  This language contemplates a finding that such orders had been made previous to or simultaneous with the ruling on the petition, but does not require the court to make such orders.  Thus, eligibility is not triggered *whenever* the court *can* take jurisdiction to make care and custody determinations; eligibility is potentially triggered only when a court has actually

---

**10**  While the minor does not argue that his previous juvenile hall commitment or the court's order sending him home to his mother's custody qualifies him, I discuss why in my view it does not, *post*.

9

made a qualifying predicate order. Moreover, the SIJ statute makes no reference to orders related to the "care" of minors, which arguably could include probation supervision; rather, qualifying predicate orders must pertain to the "commitment" or "custody" of the minor.

Second, the language quoted by the *Leslie H.* court was taken out of context from a published opinion written by a judge from the Chancery Division of the Superior Court of New Jersey, *In re J.E.* (2013) 432 N.J.Super. 361, 369 [74 A.3d 1013] (*J.E.*).[11]  This case has been expressly overruled on a related point by New Jersey's intermediate appellate court in *H.S.P. v. J.K.* (2013) 435 N.J.Super. 147, 165 [87 A.3d 255] (*H.S.P.*), cert. granted (2014) 218 N.J. 532 [95 A.3d 258].[12]

---

[11]  This case has been erroneously cited in other opinions as "*In re Minor Children of J.E.*," however, J.E. is the older sibling of the two minors in this case.

[12]  The Chancery court in *J.E.* ruled that the "[one] or more parents" language in the second part of the reunification non-viability requirement means that if reunification with one parent is not viable, the minor nevertheless qualifies for SIJ eligibility, even if reunification with the other parent is viable. (*J.E.*, *supra*, 74 A.3d at pp. 1019-1020.) Thus, the court concluded the minors were eligible because reunification with their father was not viable. (*Id.* at p. 1020.)  It is on this specific point that *J.E.* was overruled by a New Jersey intermediate appellate court in *H.S.P.* (*H.S.P.*, *supra*, 87 A.3d at p. 266.) Looking to the policy and objectives of the SIJ statute, the court in *H.S.P.* held a minor is not eligible for SIJ status where one parent is available and did not abuse, neglect or abandon the minor. (*Ibid*.)

This specific issue was not briefed by the parties.  While the majority here appears to arrive at a different result than the New Jersey intermediate appellate court concerning the "[one] or both" requirement based on the disjunctive nature of that language (see maj. opn., *ante*, at p. 7), I find it unnecessary to address the issue.  I only note that the issue has been the subject of judicial debate.  Some courts in sister states have held that a minor could qualify as long as there is proof that reunification is not viable with one parent who abused, neglected or abandoned the juvenile, even when the other parent has custody of the minor or reunification with the other parent is viable. (*Matter of Marisol N.H.* (2014) 979 N.Y.S.2d 643, 644-645 [115 A.D.3d 185]; *Matter of Marcelina M.-G. v. Israel S.* (2013) 979 N.Y.S.2d 714, 715 [112 A.D.3d 100, 102]; *Matter of P.E.A. v. Sergio A.G.G.* (2013) 975 N.Y.S.2d 85, 86 [111 A.D.3d 619]; *Matter of Karen C.* (2013) 973 N.Y.S.2d

10

In *J.E.*, the biological mother of 16- and 15-year-old sons sought a custody order and also petitioned the court to make the findings necessary for SIJ status in the case involving her custody request. (*J.E.*, *supra*, 74 A.3d at p. 1014.) The quote from *J.E.* related to whether the court had jurisdiction to make SIJ findings in the context of this custody case. A little background will add further context to the court's ruling. (*Id*. at p. 1018.)

The mother and both minors in *J.E.* were undocumented immigrants from Honduras. (*Ibid*.) While in Honduras, mother separated from father and was given legal custody of the two minors. Father tried to kill mother when she refused to let him take the minors. Fearing for her life, she fled to the United States and left the minors with father. Father physically abused the minors. Also, he was involved in drug trafficking and made no attempt to shield the minors from that activity. Ultimately, father was killed in a drug-related shootout. (*Id*. at p. 1015.) Fearing they would be killed by the drug dealers who may have thought the minors were witnesses and/or would grow up to avenge their father's death, the minors took refuge in the home of an aunt until mother arranged to have them brought to Guatemala. From there, they made it to the United States on their own where they were detained by immigration authorities, but ultimately released to mother, who at the time was enjoying Temporary Protected Status. (*Id.* at pp. 1015-1016.) Mother sought an order of custody and petitioned for SIJ eligibility findings. (*Id*. at p. 1014.)

---

810 [111 A.D.3d 622]; *Matter of Mario S.* (2012) 954 N.Y.S.2d 843, 851-852 (*Mario S.*).) Recently, after concluding the use of the word "or" is ambiguous, the First District construed the language consistent with this view. (*In re I.O.* (Jan. 16, 2015, A142080) ___ Cal.App.4th ___, ___ <http://www.courts.ca.gov/opinions.htm>.) Other courts disagree and conclude that minors are eligible only if reunification with both parents is not viable because of abuse, neglect or abandonment. (*H.S.P.*, *supra*, 87 A.3d at pp. 265-269; *In re Erick M.* (2012) 284 Neb. 340, 347 [820 N.W.2d 639, 647].) The proposed revision to the regulation does not address this issue. (See 76 Fed.Reg. 54978 (Sept. 6, 2011).)

11

The court went on to exercise authority over the minors on the basis of its *parens patriae* jurisdiction, noting that it would not normally do so, but that it was necessary to protect these particular minors from harm. (*Id.* at p. 1019.) The court also noted a statutory basis for taking jurisdiction related to the custody proceedings. (*Ibid.*) The court then concluded that the minors were dependents on the court for purposes of SIJ status. It was in this narrowly-focused jurisdictional context that the court observed, "state courts may now make SIJ[] [status] findings whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone." (*Id.* at p. 1018.) The quotation does not support the conclusion that probation supervision, in and of itself, satisfies the commitment or custody order requirement.

## C.  The Purpose of the Commitment or Custody

As I have noted, the minor was placed under the supervision of the probation department with routine terms and conditions of juvenile probation related to driving under the influence offenses, and the statute mentions nothing about supervised probation; instead, the second option of the court order requirement focuses on commitments to agencies and custody placements. Yet the minor contends he is eligible for SIJ status because the juvenile court declared him a ward and released him to his mother under the "control" of the probation department. On this point, the best case that can be made for the minor is that the statute is somehow ambiguous as to whether it contemplates SIJ eligibility for the sole reason that the juvenile court has declared the minor a ward of the court and ordered supervised probation. If ambiguous, our job is to determine the congressional intent.

As the *Leslie H.* court correctly observed, " 'In construing a federal statute, " 'we look first to the plain language of the statute, construing the provisions of the entire law, *including its object and policy*, to ascertain the intent of Congress.' " ' [Citation.]" (*Leslie H.*, *supra*, 224 Cal.App.4th at pp. 347-348, italics added.) It must also be noted

12

that "[w]e do not…construe statutory phrases in isolation; we read statutes as a whole. [Citation.]" (*Hurley v. Bredehorn* (1996) 44 Cal.App.4th 1700, 1703 (*Hurley*), citing *United States v. Morton* (1984) 467 U.S. 822, 828 [81 L.Ed.2d 680, 688].) " ' '[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, *and to its object and policy*." [Citations.]' " (*Hurley*, at p. 1703, citing *Philbrook v. Glodgett* (1975) 421 U.S. 707, 713 [44 L.Ed.2d 525, 532-533], italics added.) Further, the United States Supreme Court has emphasized the importance of avoiding " 'absurd results,' " " ' "an odd result," ' " or an " 'unreasonable results whenever possible.' " (*Hurley*, at p. 1703, citing *Public Citizen v. United States Dept. of Justice* (1989) 491 U.S. 440, 454 [105 L.Ed.2d 377, 392]; *American Tobacco Co. v. Patterson* (1982) 456 U.S. 63, 71 [71 L.Ed.2d 748, 757]; and *United States v. Turkette* (1981) 452 U.S. 576, 580 [69 L.Ed.2d 246, 243].) "[I]nterpretions of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." (*Griffin v. Oceanic Contractors, Inc.* (1982) 458 U.S. 564, 575 [73 L.Ed.2d 973, 983].) The intent of Congress concerning the current version of the SIJ statute can be easily discerned by looking at the several iterations of the statute and the policies underlying each iteration.

Congress first enacted the SIJ statute in 1990. (*In re Y.M.* (2012) 207 Cal.App.4th 892, 910.) "Congress created this classification *to protect abused, neglected, and abandoned unaccompanied minors* through a process that allows them to become permanent legal residents. [Citation]." (*Id.* at p. 915, italics added.)

Since 1990, two amendments have been enacted changing the eligibility criteria state courts must find. " ' "In 1997…Congress amended [title 8 United States Code] § 1101(a)(27)(J) to require that a court, in its order, determine that the juvenile (1) is eligible for long-term foster care due to abuse, neglect, or abandonment and (2) has been declared a dependent of a juvenile court or committed or placed with a state agency" [citations].' " (*Eddie E.*, *supra*, 223 Cal.App.4th at pp. 626-627.) This amendment was

13

made because of the concern that minors entering the United States as visiting students were abusing the SIJ status process. (*Yeboah v. United States Dept. of Justice* (3rd Cir. 2003) 345 F.3d 216, 221.) "According to the House Report accompanying the 1997 Amendments, the purpose of the [1997] amendments is to 'limit the beneficiaries of this provision to *those juveniles for whom it was created, namely abandoned, neglected, or abused children….*' " (*Id.* at p. 222, italics added.)

In 2008, as part of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (Pub.L. No. 110-457 (Dec. 23, 2008) 122 Stat. 5044) (Wilberforce Act), amendments expanding the eligibility criterion were enacted. It was the Wilberforce Act that expanded SIJ eligibility to undocumented minors who are the subject of court orders concerning their commitment and custody. (8 U.S.C. § 1101(a)(27)(J)(i).) Also, Congress deleted the requirement that the undocumented minor had to be deemed eligible for long-term foster care due to abuse, neglect, or abandonment. Instead, the state court must now find that reunification is "not viable due to abuse, neglect, or abandonment" or a similar reason under state law. (8 U.S.C. § 1101(a)(27)(J)(i); *Eddie E.*, *supra*, 223 Cal.App.4th at p. 627.) The legislative history of the 2008 Wilberforce Act reveals that "[o]ne of its key initiatives was '[p]reventing the trafficking of unaccompanied alien children found in the United States by ensuring that they are not repatriated into the hands of traffickers or abusive families.' [Citations.] The legislation's section that amended Subparagraph J was entitled, 'Enhancing Efforts to Combat the Trafficking of Children.' [Citation.] The specific subdivision containing Subparagraph J was entitled, 'Permanent Protection for Certain At-Risk Children.' [Citation.]" (*H.S.P.*, *supra*, 87 A.3d at p. 267.)

In my view, it was Congress' intent that SIJ status be available only to minors who come before the court for reasons of abuse, neglect, or abandonment by their parents or because they have been the victim of human trafficking. It appears that Congress sought to ensure this by expanding those eligible for SIJ status from minors who are dependents

14

of the court to include minors who, although not declared dependents of the court, have been committed or placed by the court due to parental abuse, neglect or abandonment, or similar basis under state law, such that the viability of reunification with 1 or more parent is implicated. Given the history and clear congressional policies underlying the statute, commitments or placements for reasons other than abuse, neglect or abandonment do not appear to be what Congress contemplated.

Ignoring this history and the underlying congressional policies, the minor argues that the order for supervised probation qualifies him. This argument is based on a reading of the statute that focuses only on the first part of the reunification non-viability requirement, the requirement for a commitment or placement order pertaining to the custody of the minor, and it expands the commitment and custody to include supervised probation. Moreover, the argument views the commitment or custody option in isolation from the second part of the reunification non-viability requirement, which appears in the same subpart and requires a showing that "reunification with [one] or both of the immigrant's parents is not viable *due to abuse, neglect, abandonment, or a similar basis*." (8 U.S.C. § 1101(a)(27)(J)(i), italics added.) As I have noted, in construing federal legislation, courts must not focus on a single sentence and we must not read provisions in isolation from each another. (*Hurley*, *supra*, 44 Cal.App.4th at p. 1703.) Rather, we must look to "the provisions of the whole law," and its "object and policy." (*Id.* at p. 1703; see also *Leslie H*., *supra*, 224 Cal.App.4th at pp. 347-348.) Accordingly, I read the language setting forth the commitment or custody option in conjunction with the second part of the reunification non-viability requirement, which mandates a finding that reunification is not viable "due to abuse, neglect, abandonment, or similar basis found under State law." (8 U.S.C. § 1101(a)(27)(J)(i).) Reading these provisions from the same subpart together instead of in isolation from each other and with the underlying policies of Congress in mind, I conclude the statute requires that the reasons for the commitment or placement must be "due to abuse, neglect, abandonment, or similar basis

15

found under State law."  Merely being declared a ward of the court and placed on supervised probation does not qualify a minor for SIJ status.  Nor, for that matter, would orders committing a minor to juvenile hall[13] or placing the minor in the custody of a parent qualify unless those orders were somehow made because the minor had been abused, neglected or abandoned or there was some other similar basis for the  under California law.

There is support for this reading of the statute in at least two New York cases. Both cases involve a request for a determination of SIJ eligibility made in the context of child support petitions.  The Family Court in *Matter of Tung W.C. v. Sau Y.C.* (2011) 940 N.Y.S.2d 791, rejected a petition for SIJ eligibility reasoning, "A minor's application for SIJ[] [status] must be based on neglect, abandonment or abuse [citations].  *Although [the minor] may have established a pattern of abuse by his mother*, which occurred when they resided in Hong Kong, *that is not the subject of the action pending in this court.*" (*Id.* at pp. 794-795, italics added.)  A New York intermediate appellate court in *Matter of Hei Ting C.* (2013) 969 N.Y.S.2d 150 [109 A.D.3d 100], rejected the argument that a child support order equates to dependency.  In doing so the court reasoned, "the impetus behind the enactment of the SIJ[] scheme is to protect a child who is abused, abandoned,

---

[13] I also note it appears that continued commitment or custody is required.  The current regulation requires continued dependency. A minor is not eligible if the dependency has ended.  (8 C.F.R. § 204.11(c)(5) (2014).)  This provision is not necessarily inconsistent with the current statute.  In that same vein, the proposed updated regulation which, when finalized, would update the regulation and make it consistent with the current statute, would require that any custody commitments or placements continue through the adjudication of the SIJ classification adjudication, unless the age of the petitioner prevents such continuation.  (76 Fed.Reg. 54978, 54985 (Sept. 6, 2011).)  Thus, it appears the Department of Homeland Security views the intent of Congress to make SIJS eligibility available only as long as the qualifying order is in effect.  Here, the minor's release from his juvenile hall commitment after being sentenced to time served would cut off any claim to eligibility related to that commitment.

or neglected and to provide him or her with an expedited immigration process.…  In this case, *there has been no need for intervention by the Family Court to ensure that the appellants were placed in a safe and appropriate custody, guardianship, or foster care situation,* and the appellants have not been committed to the custody of any individual by any court [citations]."  (*Id*. at p. 154.)  As examples of an order that would qualify a minor, the *Hei Ting C.* court cited a list of guardianship cases.  (*Ibid*.)  The court went on to say, "Finally, we observe that allowing Family Court proceedings which are not related to custody and guardianship matters to serve as a vehicle for obtaining SIJ[] [status] special findings would not further the underlying policies behind the SIJ[] scheme, i.e., to protect abused, neglected, and abandoned immigrant children, and would also risk opening the door to abuse of the SIJ[] process."  (*Id*. at p. 155.)

Indeed, the minor's construction of the SIJ statute here would lead to results I believe were not intended by Congress.  (See *Hurley*, *supra*, 44 Cal.App.4th at p. 1703.)  The minor's interpretation of the statute expands the plain language of the statute to include supervised probation within the scope of the statute without any real explanation why a California court should approve such an expansion of this federal legislation.  For example, the minor has directed us to no legislative history showing that an object or policy of the statute was to provide SIJ status to a minor who has been placed under the supervision of a probation department solely for accountability, rehabilitative and public protection purposes as opposed to having been placed in the custody of an agency or person because that minor has been abused, neglected, abandoned.  (See *In re W.B*. (2012) 55 Cal.4th 30, 46 (*W.B.*) ["[T]he delinquency system enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public."].)  Indeed, it seems absurd to read a statute that was designed to protect abused, neglected and abandoned minors and those that have been the victim of human trafficking to include minors over whom the juvenile court has exercised jurisdiction and issued orders for the *sole reason* that the minor has committed a crime.  In my view, to be eligible for

17

SIJ status, the minor must either be a dependent of the juvenile court or the juvenile court must have ordered that the minor be committed or placed away from a parent for reasons of abuse, neglect, abandonment or a similar basis under California law.

To be sure, a California juvenile delinquency court could order that a delinquent minor be treated as a dependent of the court. (§ 241.1.[14]) However, that is not what happened here.

Also, a California juvenile delinquency court can remove a delinquent minor from the custody of the parents and place the minor elsewhere "if the court finds: (1) the parent has not or cannot provide 'proper maintenance, training, and education' for the child;…or (3) the child's welfare requires that custody be taken from the parent. (§ 726, subd. (a)[(1)-(3)].)" (*W.B. supra*, 55 Cal.4th at p. 44; see also Cal. Rules of Court, rule 5.790(d)(1), (3).) It would seem that either of these statutory grounds constitute a "basis found under State law" that is "similar" to "abuse, neglect, [or] abandonment." (8 U.S.C. § 1101(a)(27)(J)(i).) However, no such orders were made here. To the

---

[14] Section 241.1 provides in pertinent part: "(a) Whenever a minor appears to come within the description of both Section 300 and Section 601 or 602, the county probation department and the child welfare services department shall, pursuant to a jointly developed written protocol described in subdivision (b), initially determine which status will serve the best interests of the minor and the protection of society. The recommendations of both departments shall be presented to the juvenile court with the petition that is filed on behalf of the minor, and the court shall determine which status is appropriate for the minor.… [¶]…[¶] (d) Except as provided in subdivision (e), this section shall not authorize the filing of a petition or petitions, or the entry of an order by the juvenile court, to make a minor simultaneously both a dependent child and a ward of the court. [¶] (e) Notwithstanding subdivision (d), the probation department and the child welfare services department, in consultation with the presiding judge of the juvenile court, in any county may create a jointly written protocol to allow the [two departments to recommend] that the child be designated as a dual status child, allowing the child to be simultaneously a dependent child and a ward of the court.…" This statute was amended effective January 2015, but only a minor, nonsubstantive change was made to the aforementioned provisions.

contrary, the juvenile court expressly found there was no evidence of abuse, neglect, or abandonment by the mother and ordered the minor returned to her custody. Moreover, the court did not order custody with the mother for the reason that the minor had been abused, neglected, or abandoned by the father. Furthermore, the court expressly found that the minor was not before the court for reasons of abuse, neglect, or abandonment, which I read as a finding that no such custody orders for those reasons were in effect. Consequently, for this additional reason, the minor does not qualify under the alternative commitment or custody option in the SIJ statute.

The majority's citation to *Leslie H.* can be read to imply that the majority agrees with the notion that " '*legally committed to,* or placed under the custody of' " includes probation supervision. Aside from relying on the quote from *J.E.* that " 'state courts may now make SIJ [status] findings whenever jurisdiction can be exercised under state law to make care and custody determinations' " (*Leslie H.*, *supra*, 224 Cal.App.4th at p. 349), the *Leslie H.* court also relied on the published opinion of a New York Family Court judge in *Mario S.*, *supra*, 954 N.Y.S.2d 843 in concluding probation supervision in and of itself could be a qualifying order. The *Leslie H.* court wrote: "In *Mario S.*, the court determined a minor alien adjudicated a delinquent, placed in juvenile hall, and committed upon release to ongoing child welfare agency supervision qualified under section 1101(a)(27)(J)(i) as a child in dependent, committed, or custodial care. (*Mario S.*, *supra*, 954 N.Y.S.2d at pp. 850-851.) *The same is true here.* Leslie filed her petition for the juvenile court to make the requisite SIJ findings while in juvenile custody, and she remained in custody through the hearing. *She also remained subject to continued juvenile court jurisdiction and supervision on probation terms upon her eventual release.*" (*Leslie H.*, *supra*, 224 Cal.App.4th at pp. 351-352, italics added.)

The *Leslie H.* court's observation that "[t]he same is true here" is in error. The same is not true here. New York dependency and delinquency law is not the same as in

19

California.  That difference allowed the *Mario S*. judge to apply the dependency option of the court order requirement to find SIJ eligibility in that case.

In *Mario S*., the father of the minor had been deported and the minor was living with his mother when he was adjudicated a delinquent and placed on supervised probation.  After being found in violation of his probation, he was committed to the custody of the New York State Office of Children and Family Services (OCFS) where he remained in custody in a facility for 12 months.  (*Mario S*., *supra*, 954 N.Y.S.2d at pp. 845-847.)  After his release, the minor resided with his mother and received " 'aftercare' " through OCFS.  (*Id.* at pp. 847, 850.)  The minor petitioned for SIJ status on the ground that he was a "*dependent* upon the Family Court by virtue of the juvenile delinquency proceeding which resulted in his placement in state custody…." (*Id.* at p. 846, italics added.)

The *Mario S*. judge explained, "Under New York law, a youth who has been adjudicated to be a juvenile delinquent and who is placed in the custody of OCFS or the custody of an authorized agency *is defined as a 'dependent child'* [citation]…." (*Mario S*., *supra*, 954 N.Y.S.2d at p. 850, italics added.)  Thus, the *Mario S*. court found the minor eligible because "at the time the motion was filed and granted, the juvenile was *a dependent child under New York law* as he was a juvenile delinquent placed in the legal custody of a state agency and was under the continuing jurisdiction of the Family Court [citation]." (*Id.* at p. 851.)  The court further observed that under New York law, the minor remained a dependent during the period of "conditional release," while he was under OCFS supervision.  (*Id.* at p. 850.)  Thus, while the minor was on a form of supervised probation after he was released from state agency custody, he remained eligible for SIJ status, not because he was on probation, but because he was a dependent under New York law.  The judge in *Mario S*. never addressed the applicability of the commitment or custody option or even suggested that a grant of supervised probation

would qualify as a commitment or custody order.  Cases are not authority for propositions not therein considered.  (*People v. Scheid* (1997) 16 Cal.4th 1, 17.)

California law is different from New York law; dependency and delinquency are separate and distinct in this state.  " 'Dependency proceedings in the juvenile court are special proceedings with their own set of rules, governed, in general, by the Welfare and Institutions Code.' [Citation.]  'Under section 300, a child who is neglected or abused falls within the juvenile court's protective jurisdiction as a "dependent child of the court." ' " (*In re M.C.* (2011) 199 Cal.App.4th 784, 790 (*M.C.*).)  "As a dependent, the juvenile court may remove the minor from the home, or place the minor in alternative care that meets his or her needs for custody, care and guidance.  [Citation.]" (*In re Joey G.* (2012) 206 Cal.App.4th 343, 347 (*Joey G.*).)  "Alternatively, the juvenile court may take jurisdiction over a minor as a ' "ward of the court" when the child is habitually disobedient or truant,' under section 601, or commits a crime, under section 602.  [Citation.]" (*Id.* at p. 347; see also *M.C.*, at p. 790.)  The California dependency system is "geared toward protection of a child victimized by parental abuse or neglect," while "the delinquency system enforces accountability for the child's own wrongdoing, both to rehabilitate the child and to protect the public." (*W.B.*, *supra*, 55 Cal.4th at p. 46.)  The California Legislature has declared that a minor cannot simultaneously be both dependent and delinquent, absent a written protocol agreed upon by the presiding judge of the juvenile court, the probation department, and the child welfare services department, for a child to be designated as "dual status." (§ 241.1, subd. (e); see also fn. 12, *ante*; *W.B.*, at pp. 46-47; *Joey G.*, at p. 347.)  Consequently, unlike in New York, where a delinquent minor can be considered SIJ-eligible while released under the supervision of a state agency because the minor is also a dependent under New York law, such is not the case in California.  The *Leslie H.* court appears to have missed this nuance and equated supervised probation in California to that in New York to arrive at the conclusion that supervised probation for California delinquency wards makes them eligible for SIJ status.

21

The court in *Leslie H.* and the majority here cite *Eddie E.*, another case involving a delinquency ward where the juvenile court failed to make the required SIJ eligibility findings. In *Eddie E.*, the minor had been brought to this country and then abandoned by his mother, who later died. The juvenile delinquency court found that the minor did not qualify for SIJ status for the sole reason that he had been declared a ward of the court. (*Eddie E.*, *supra*, 223 Cal.App.4th at p. 625.) The juvenile court never made findings related to the alternative commitment and custody option, *even though the record clearly demonstrated that such qualifying orders had been made*.

After adjudicating the minor a ward of the court for having stolen a car, the juvenile delinquency court in *Eddie E.* committed the minor to the care of the probation department for placement in juvenile hall, with credit for time served and then immediately released the minor to Immigration and Customs Enforcement (ICE). The following year, the minor's probation was transferred to another county after he was placed in a foster home in that county. Thereafter, the minor was transferred to an Office of Refugee Resettlement shelter. (*Eddie E.*, *supra*, 223 Cal.App.4th at p. 625.) The minor remained in continuous custody, and unlike here, those commitments and placements were of the sort clearly contemplated by the commitment or custody option. Those commitments and placements appeared to have been made because the minor had been abandoned; his mother had died and he was unaccompanied. The *Eddie E.* court held that the juvenile court erred by focusing only on the dependency option and not making findings related to the commitment or custody alternative basis for eligibility. (*Id.* at p. 628.) Under those circumstances, the *Eddie E.* court appropriately reversed the juvenile court's ruling and remanded, ordering the juvenile court to make findings regarding orders the record clearly demonstrated existed.

Our case is different. The record here demonstrates that no orders like those in *Eddie E.* were ever made. In my view, the majority is remanding this case back to the

22

juvenile court to make findings related to the existence of orders we know did not exist at the time of the minor's SIJ status eligibility motion.

Despite the plain language of the SIJ statute, the minor suggests that the commitment or custody option must be construed broadly, so as to include minors, like him, who are placed under the "control" of the probation department. The minor refers us to a memorandum of the U.S. Citizenship and Immigration Services (CIS), which described the 2008 amendments to the federal law as having "expanded" the group of minors eligible for SIJ status. I agree that Congress intended to expand eligibility for SIJ status in enacting the 2008 amendments. However, the memorandum does not say anything about delinquent minors or probation supervision. The memorandum notes, "An eligible SIJ alien now includes an alien: [¶] • who has been declared dependent on a juvenile court; [¶] • whom a juvenile court has legally committed to, or placed under the custody of, an agency or department of a State; or [¶] • who has been placed under the custody of *an individual or entity appointed by a State or juvenile court*." The memorandum goes on to provide guardianship proceedings as an example. In my view, the fact that the memorandum does not mention juvenile delinquents or supervised juvenile probation for juvenile delinquents is telling, particularly in light of the prevalence of such orders.[15]

Similarly, a publication by ICE, entitled *Special Immigrant Juvenile Status: Information for Juvenile Courts*, gives examples of qualifying juvenile court orders in describing who is eligible for SIJ status. "SIJ-eligible children may come from a variety of circumstances, including, but not limited to, children in federal custody in the U.S.

---

[15] I also note that the commentary to the proposed updated regulation states, "Therefore, commitment to, or placement under the custody of an individual, can include adoption and guardianship." Probation supervision orders for delinquent minors are not referenced in the proposal or the commentary. (76 Fed.Reg. 54978, 54980 (Sept. 6, 2011).) I think this omission is equally telling.

without parents or legal guardians, children in a state's child welfare system (for example, foster care), and children in the court-ordered custody of a state agency or individual. This can include adoption or guardianship." (http://www.uscis.gov/sites/default/files/USCIS/Green%20Card/Green%20Card%20Through%20a%20Job/Information_for_Juvenile_Courts_-FINAL.pdf [as of Feb. 6, 2015].) Again, there is no reference to juvenile delinquents or probation supervision orders for juvenile delinquents, and the omission in this publication seems particularly telling since it is addressed to juvenile courts and it lists delinquency courts as examples of courts that might have jurisdiction under state law to make SIJ status eligibility findings. (*Ibid.*)

### D. Neglect

The minor argues his mother is a neglectful parent because she brought him to the United States to work and failed to enroll him in school, and he started drinking at age 16. He contends this purported neglect makes him eligible for SIJ status. He cites *In re Derrick S.* (2007) 156 Cal.App.4th 436, a totally inapposite dependency case, which merely mentioned as part of the factual background that a mother had submitted on an allegation that she " 'failed to provide [her seven-year-old child] adequate dental treatment and adequate housing for the child and has failed to ensure that the child attend school regularly.' " (*Id.* at p. 440) The *Derrick S*. court addressed an issue related to the termination of reunification services and is of no help to the minor here.

Moreover, as I have noted, the SIJ statute does not require a juvenile court to make a commitment or custody order because of abuse, neglect or abandonment. Instead, it requires the court to determine whether the minor *has been* the subject of a commitment or custody order.

Here, the juvenile court did not remove the minor from his mother's custody because of her failure to send the minor to school. Consistent with the recommendation of the probation department, the court allowed the minor to continue living with his mother. One of the probation conditions is that the minor pursue a high school diploma

24

or GED, and the probation report says, "The minor's mother stated that she is in the process to enroll [*sic*] the minor in school."  According to the probation report, the minor lived in a stable home with his mother, half-sister and "stepfather" where he had a good relationship with the members of the family.  Prior to his arrest, the mother provided the minor with food, shelter and clothing.  The minor was in good health.  While he had not been in school, the minor was not involved with any gangs.  The mother had no criminal record.  She has no history of alcohol or other substance abuse or mental health problems.  She was not ordered to attend parenting classes.  She had not been deported and the record discloses no evidence that deportation proceedings had been instituted against her.

While a juvenile delinquency court can remove a delinquent minor from the custody of the parents when the court determines the parent "has failed or neglected to provide proper maintenance, training, and education for the minor" or "the welfare of the minor requires that custody be taken from the minor's parent…" (§ 726, subd. (a)(1), (3)), under the circumstances presented here, the juvenile court understandably made no orders removing the minor from the mother's custody and placing him with an agency or appointed person.[16]  Instead, the minor was put on supervised probation like other minors who commit acts that would be crimes if committed by adults.

---

[16]  In contrast, the juvenile court in *Leslie H.* would have been well within its discretion to make such orders in that case.  In that case, the minor had been brought to the United States by her mother as an infant.  The mother, who was "unemployed, irresponsible, and a heavy drinker," did not properly care for the minor.  (*Leslie H.*, *supra*, 224 Cal.App.4th at p. 345.)  The minor's father, a drug user, was largely absent, and the minor recalled meeting him only once.  (*Id.* at pp. 345-346.)  At one point, the mother took the minor back to Mexico, but the minor called the grandmother complaining about physical abuse and neglect.  Thereafter, the mother brought minor back to live with her grandmother in the United States because the grandmother threatened to stop sending money to the mother if the minor was not returned.  When the minor returned, she was gaunt, malnourished, suffered nightmares, ate little, cried easily and was afraid to leave the grandmother's side.  (*Id.* at p. 345.)  Under these circumstances, placement by the

## IV.  Conclusion

For all of the above reasons, the record does not demonstrate that the minor is eligible for SIJ status.  The juvenile court's error in failing to make all of the SIJ findings is harmless.  Accordingly, I would affirm.

_____MURRAY_____, J.

---

juvenile court away from that minor's parents could certainly be viewed as necessary for the minor's welfare.