Filed 12/23/19; Modified and Certified for Publication 1/8/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| O.C., a Minor, <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> BLANCA ODILIA CARRILLO GALLARDO, as Guardian, etc., <br><br> Real Party in Interest. | G058416 <br><br> (Super. Ct. No. 30-2019-01049051) <br><br> O P I N I O N |

Appeal from findings by the Superior Court of Orange County, David L. Belz, Judge. Appeal treated as petition for writ of mandate. Petition granted.

Public Counsel, Mary Tanagho Ross, Lucero Chavez; Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Jessica M. Weisel for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

\* \* \*

INTRODUCTION

Special immigrant juvenile findings (SIJ findings) based on state law are a necessary first step under the federal immigration law that allows abandoned, unaccompanied minors living in the United States to apply for status as permanent legal residents. (8 U.S.C. § 1101(a)(27)(J);[1] Code Civ. Proc., § 155.[2]) In this case, O.C., a 14-year-old refugee from Guatemala, asked the superior court to make the required SIJ findings based on California law. A mandatory Judicial Council form has been created for this purpose. Items 4(b), 5, and 6 require the superior court to detail its findings, citing California law. The superior court failed to cite California statutory or case law in items 4(b) and 6, and did not check the box in item 5 to indicate O.C. cannot reunify with her mother, who is deceased.

We treat the notice of appeal as a petition for writ of mandate. We grant the petition and order the probate court to vacate the August 1, 2019 SIJ findings and issue new findings in items 4(b) and 6 of the mandatory Judicial Council form (FL-357/GC-224/JV-357) based on state law, as proposed by O.C. and in compliance

---

[1] The federal government may grant special immigrant juvenile status to a minor "who has been declared dependent [in] a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law" provided "it has been determined in administrative or judicial proceedings that it would not be in the [minor's] best interest to be returned to the [minor's] . . . previous country." (8 U.S.C. § 1101(a)(27)(J)(i), (ii).)

[2] All undesignated statutory citations refer to the Code of Civil Procedure.

2

with title 8 United States Code section 1101(a)(27)(J), 8 Code of Federal Regulations part 204.11 (2019), and Code of Civil Procedure section 155.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

O.C., now 14 years old, was born in Jutiapa, Guatemala. O.C. was 12 years old when her mother died. O.C.'s father became ill and depressed, and failed to provide O.C. with the care she needed. In July 2017, O.C. and her cousins left Guatemala and traveled through Mexico until they reached the United States. At the U.S.-Mexico border, O.C. and her cousins were detained by immigration officials; they were released to the care of Blanca Odilia Carrillo Gallardo, O.C.'s aunt and the mother of her cousins. Gallardo had moved to the United States in about 2008, and sent money back to O.C.'s mother in Guatemala to care for her children.

O.C. has lived in Gallardo's home since September 2018. O.C. is attending school and learning English. Gallardo provides O.C. with everything she needs and treats her like a daughter. O.C.'s father does not send any money from Guatemala for her expenses.

O.C. has no one in Guatemala to care for her. Local gangs in O.C.'s hometown assault and steal from community members; the police are unable to control the gang members. Federal travel advisories support O.C.'s fear that gang members will hurt her if she returns to Guatemala.[3]

---

[3] Travel advisories included in the appellate record describe the type and volume of crime committed in Guatemala and recommend American citizens reconsider traveling there. (See U.S. Dept. of State, Guatemala 2018 Crime and Safety Report <https://www.osac.gov/Content/Report/618d66c1-c733-433f-96c0-15f4ae699d92> archived at: <https://perma.cc/M2TC-NSUY> [as of Dec. 20, 2019]; U.S. Dept. of State, Bureau of Consular Affairs, Guatemala Travel Advisory <https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/guatemala-travel-advisory.html> archived at: <https://perma.cc/KZ8T-7QY4> [as of Dec. 20, 2019].) According to these documents, "[v]iolent crime, such as armed robbery and murder, is common [throughout Guatemala]. Gang activity, such as extortion, violent

3

On February 4, 2019, using mandatory Judicial Council forms, O.C. petitioned the probate court to appoint Gallardo as her guardian and to make SIJ findings. O.C. included declarations in support of both petitions. No objections were received.[4] Following a hearing, the probate court granted the petition to appoint Gallardo as O.C.'s guardian and approved the petition for SIJ findings.

As to the SIJ findings, the minute order reads: "The Court finds that: (1) The minor is a dependent upon the juvenile court, within the meaning of 8 U.S.C. Section 1101(a)(27)(J) and 8 C.F.R. Section 204.11(a), (d)(2)(i); (2) It is not in the best interest of the minor to return to the minor's or the minor's parents' previous country of nationality or country of last habitual residence, within the meaning of 8 U.S.C. Section 1101(a)(27)(J) and 8 C.F.R. Section 204.11(d)(2)(iii); and (3) Reunification with one or both of the minor's parents is not viable due to abuse, neglect or abandonment, within the meaning of 8 U.S.C. Section 1101(a)(27)(J) and 8 C.F.R. Section 204.11(d)(2)(iii)."

O.C.'s counsel submitted proposed SIJ findings on the mandatory Judicial Council form (FL-357/GC-224/JV-357) for that purpose. The probate clerk advised counsel the proposed findings could not be processed because they did not match the findings in the probate court's minute order or the language of the petition.

O.C.'s counsel submitted revised SIJ findings, again citing California law. The probate court issued its findings on the Judicial Council form, but as factual bases for its findings in items 4(b) and 6, it cited only the federal statute and federal code of regulations, not California law.

O.C.'s counsel then submitted amended SIJ findings and filed a memorandum of points and authorities explaining why the state law references suggested

_____

street crime, and narcotics trafficking, is widespread. Local police may lack the resources to respond effectively to serious criminal incidents."

[4] O.C.'s father waived the right to notice for both the guardianship and SIJ findings petitions.

4

by O.C.'s counsel, but not included in the probate court's findings, was necessary. The probate clerk rejected the proposed amended findings: "We are unable to process the attached papers for the reasons indicated below: Order already on file 08/01/2019. Order can not [*sic*] be amended to include codes that were not in the petition. Factual findings are per minute order."

O.C. filed a notice of appeal from the probate court's SIJ findings. To ensure O.C. obtains appellate review of the probate court's findings, we exercise our discretion to treat the appeal as a petition for writ of mandate. (*Olson v. Cory* (1983) 35 Cal.3d 390, 400-401; see *Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 628 (*Eddie E.*) [petition for writ relief is the remedy for a superior court's denial of a minor immigrant's request for SIJ findings].)

## DISCUSSION

Our analysis involves the application of law to undisputed facts; accordingly, our review is de novo. (*Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 347 (*Leslie H.*).)

Title 8 United States Code section 1101(a)(27)(J) "is a form of immigration relief that affords undocumented children a pathway to lawful permanent residency and citizenship [by employing] 'a unique hybrid procedure that directs the collaboration of state and federal systems.'" (*In re Marisol N.H.* (2014) 979 N.Y.S.2d 643, 645.) As this court has observed, the specified procedure does not permit state courts to interpret or apply federal law or "determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country." (*Leslie H., supra,* 224 Cal.App.4th at p. 351.) State courts are "'called upon to determine' discrete factual issues, including 'whether, *under state law*, the juvenile is under the age of 21, unmarried, dependent upon the court through an order of placement

5

or other court order, whether reunification with one or both of the juvenile's parents is not possible due to abuse, neglect, or abandonment of the child, and whether it would be contrary to the juvenile's best interest to be returned to his or her previous country of nationality.'" (*Ibid.*, italics added.)

These findings must be made with reference to California law. (8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11; Code Civ. Proc., § 155, subd. (a)(1).)[5] Moreover, if substantial evidence supports the requested SIJ findings, the issuance of the findings is mandatory. (§ 155, subd. (b)(1).)

Although title 8 United States Code section 1101(a)(27)(J) is worded in terms of a state "juvenile court" having jurisdiction to make the requisite findings under state law, the relevant federal regulation defines "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." (8 C.F.R. § 204.11(a).) Section 155, which codified the holdings in a number of Court of Appeal decisions, is in accord. Section 155, subdivision (a)(1) provides that jurisdiction "to make judicial determinations regarding the custody and care of children within the meaning of the federal Immigration

---

[5] Federal and state practice guides reiterate and reinforce the need for state judges to make their findings based on state law. A United States Citizenship and Immigration Services (USCIS) publication prepared for use by juvenile courts nationwide advises, "Juvenile courts issue orders that help determine a child's eligibility for SIJ status. A child cannot apply to USCIS for SIJ status without an order from a juvenile court. . . . *The role of the court is to make factual findings based on state law about the abuse, neglect, or abandonment; family reunification; and best interests of the child.*" (Special Immigrant Juvenile Status: Information for Juvenile Courts, italics added <https://www.ncjfcj.org/sites/default/files/Information_for_Juvenile_Courts - FINAL%20%281%29.pdf> archived at: <https://perma.cc/2K6J-MBNU> [as of Dec. 20, 2019].) That same publication reminds juvenile courts that while they should be familiar with current immigration law, "[a]ll findings must be based on state law." (*Ibid*.)
 A September 30, 2014 memorandum from the California Judicial Council to presiding judges and chief executive officers of California's superior courts addresses section 155 and provides in relevant part: "All findings are to be based on California state law."

6

and Nationality Act (8 U.S.C. Sec. 1101 et seq. and 8 C.F.R. Sec. 204.11)" rests with the superior court, "which includes, but is not limited to, the juvenile, probate, and family court[s]."

In *Eddie E., supra*, 223 Cal.App.4th 622—a decision that predates section 155—this court explained that under the federal statute "a court must find *either* that an immigrant has been (a) 'declared dependent on a juvenile court' *or* (b) 'legally committed to, or placed under the custody of' a state agency or department or 'an individual or entity appointed by a State or juvenile court located in the United States.' [Citation.]  Once *either* of those findings is made, the court must then '"ma[k]e two additional findings:  (1) that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found *under State law*; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."'" (*Eddie E., supra*, at pp. 627-628, third italics added; see *B.F. v. Superior Court* (2012) 207 Cal.App.4th 621, 630 ["the superior court sitting as a probate court has the authority and duty to make findings within the meaning of section 1101(a)(27)(J) [of title 8 of the United States Code] and 8 Code of Federal Regulations part 204.11"].)

The requisite factual findings "may be made at any point in a proceeding regardless of the division of the superior court or type of proceeding."  (§ 155, subd. (a)(2).)  Three findings are required (*id.*, subd. (b)(1)(A)-(C)); additional findings may be made "if requested by a party" (*id.*, subd. (b)(2).)  The threshold finding for a superior court is that the immigrant child was either declared a dependent of the court or placed under the custody of a court-appointed guardian.  (*Id.*, subd. (b)(1)(A)(i), (ii).)  In making this finding, the superior court must indicate the date on which the dependency or placement began.  (*Id.*, subd. (b)(1)(A)(ii).)  The second required finding is that the immigrant child cannot reunify with one or both parents "because of abuse, neglect, abandonment, or a similar basis pursuant to California law."  (*Id.*, subd. (b)(1)(B).)  The

7

superior court's findings must "indicate the date on which reunification was determined not to be viable." (*Ibid.*)  Finally, the superior court must find "it is not in the best interest of the child to be returned to child's . . . previous country." (*Id.*, subd. (b)(1)(C).)

California superior courts must issue their findings on a Judicial Council form created for this purpose.  Item 4(b) on the form applies when the immigrant child is not a dependent of the juvenile court, but has come within the superior court's jurisdiction by other means, e.g., delinquency or guardianship.  There, the superior court must include citations to the applicable state statutory or decisional authority (e.g., Welfare and Institutions Code, Probate Code, or Family Code) upon which the threshold custody or commitment order is based.  (§ 155, subd. (b)(1)(A)(i), (ii).)  In item 5 on the form, the superior court must identify whether state court jurisdiction was obtained as the result of "abuse, neglect, abandonment, or a similar basis pursuant to California law." (*Id.*, subd. (b)(1)(B).)  The superior court's findings also must "indicate the date on which reunification was determined not to be viable." (*Ibid.*)  Finally, item 6 on the form requires the superior court to make findings as to why it is not in the child's best interest to be returned to his or her country of nationality or last habitual residence. (*Id.*, subd. (b)(1)(C).)

O.C. submitted proposed findings that complied with federal and state law. It appears the probate court never reviewed O.C.'s proposed findings, however.  The probate court issued no minute orders concerning O.C.'s proposed language.  Instead, the proposed findings were rejected for "processing" by a probate clerk, whose stated reasons for the rejections had no basis in law.

Ignoring O.C.'s proposed language, the probate court's findings in item 4(b) of the Judicial Council form cited only federal law.  The probate court appropriately relied on state statutes and an appellate decision to support its findings in item 5 as to O.C.'s father and deceased mother, but did not check the box referencing mother.  The probate court also failed to cite any state authority to support the findings

8

detailed in item 6. The findings in items 4(b) and 6 are insufficient under federal and state law; the failure to check the box in item 5 appears to be an oversight.

The stated purpose for SIJ findings is to enable an immigrant child to petition the USCIS for SIJ status. (§ 155, subd. (a)(1).) The failure to issue the SIJ findings under state law prejudices O.C.'s ability to seek SIJ status from USCIS. Without compliant findings, "no youth can apply for [SIJ status]." (Note, *Fear and Failing in Family Court: Special Immigrant Juvenile Status and the State Court Problem*, 21 Cardozo J.L. & Gender 201, 214.) Indeed, SIJ status has been denied due to the failure of other state courts to specify that their SIJ findings were based on state law. (See *Matter of A-A-M-R* (Jan. 31, 2019) Admin. Appeals Off. No. 01949751, at p. 4 ["For SIJ classification, the record must demonstrate that the court made a legal rather than solely factual determination on the viability of parental reunification because section 10l(a)(27)(J)(i) of the Act requires the ruling to be made 'under State law'"];[6] *Matter of O-T-A* (Aug. 16, 2017) Admin. Appeals Off., No. 00214172, at p. 3 ["Because the order and supporting evidence contain no reference to any state law under which the reunification determination was made, the order lacks a qualifying determination that parental reunification is not viable, as section 101 (a)(27)(J)(i) of the Act requires [and] the Petitioner is ineligible for SIJ classification"].)[7]

For this reason, the probate court must issue findings based on state law.

---

[6] <https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2019/JAN312019_02C6101.pdf> archived at: <https://perma.cc/Z3F6-M84S> [as of Dec. 20, 2019]

[7] <https://www.uscis.gov/sites/default/files/err/C6%20-%20Dependent%20of%20Juvenile%20Court/Decisions_Issued_in_2017/AUG162017_01C6101.pdf> archived at: <https://perma.cc/C8RK-BG5A> [as of Dec. 20, 2019]

DISPOSITION

Let a writ of mandate issue directing respondent court to vacate the SIJ findings entered on August 1, 2019. Within 10 days of this decision becoming final, O.C. may submit proposed findings for items 4(b), 5, and 6 on the Judicial Council form.


DUNNING, J.*

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.

* Retired Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10

Filed 1/8/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| O.C., a Minor,<br><br>    Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>BLANCA ODILIA CARRILLO GALLARDO, as Guardian, etc.,<br><br>    Real Party in Interest. | G058416<br><br>(Super. Ct. No. 30-2019-01049051)<br><br>ORDER MODIFYING OPINION AND GRANTING REQUEST FOR PUBLICATION; NO CHANGE IN JUDGMENT |

It is ordered that our opinion filed on December 23, 2019, be modified as follows:

On page 4, the first sentence of the last paragraph that begins "O.C.'s counsel then submitted," and continues onto page 5, the word "was" is changed to "were" so the sentence reads:

O.C.'s counsel then submitted amended SIJ findings and filed a memorandum of points and authorities explaining why the state law references suggested by O.C.'s counsel, but not included in the probate court's findings, were necessary.

This modification does not result in a change in the judgment.

Petitioner has requested that our opinion be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(1) and (6).  The request is GRANTED.  The opinion is ordered published in the Official Reports.


DUNNING, J.*

WE CONCUR:


O'LEARY, ACTING P. J.


GOETHALS, J.



*  Retired judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.