Filed 2/28/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LESLIE H.,<br><br>    Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent,<br><br>THE PEOPLE,<br><br>Real Party in Interest. | G049127<br><br>(Super. Ct. No. DL042745)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Gregory W. Jones, Judge. Petition granted.

University of California, Irvine School of Law Immigrant Rights Clinic and Sameer M. Ashar; Public Counsel and Kristen Jackson for Petitioner.

No appearance for respondent.

Rachel Prandini for Catholic Charities of Los Angeles, Inc., Esperanza Immigrant Rights Project; Jennifer Nagda and Maria Woltjen, *pro hac vice*, for Young Center for Immigrant Children's Rights at the University of Chicago, as Amici Curiae on behalf of Petitioner.

Sixteen-year-old Leslie H. petitions for unopposed writ relief after the juvenile court denied her request to make the necessary factual findings to enable her to apply to federal officials for classification as an abused, neglected, or abandoned special immigrant juvenile (SIJ) under title 8 United States Code section 1101(a)(27)(J) (SIJ statute or section 1101(a)(27)(J)) of the Immigration and Nationality Act.  The juvenile court concluded Leslie's delinquency adjudication as a ward of the court (Welf. & Inst., § 602), commitment for 120 days to juvenile hall, and eventual release on supervised probation did not suffice under the SIJ statute to identify her as a child in dependent, committed, or custodial care.  The juvenile court similarly found her delinquency status disqualifying on an unrelated SIJ factual question — the viability of parental reunification — and rejected Leslie's claim she could not return to her abusive mother and absent father.  On a third SIJ factor, whether the minor's best interests include repatriation, the juvenile court again found Leslie's delinquency status disqualifying.  Although Leslie had no one to return to in Mexico other than her abusive mother or her father who abandoned her, the court based its best interests conclusion on its observation that immigrant parents sometimes "send their children back to Mexico to get them out of the negative environment that has placed them in the juvenile court."

In 1990, Congress enacted the SIJ statute to open a path for abused, neglected, and abandoned undocumented minors to become lawful permanent residents.  (*In re Y.M.* (2012) 207 Cal.App.4th 892, 910.)  "Rather than being deported along with abusive or neglectful parents, or deported to parents who had abandoned them once in the United States, such children may seek special status to remain in the United States."  (*Yeboah v. Department of Justice* (3d Cir. 2003) 345 F.3d 216, 221.)  "SIJ status allows a juvenile immigrant to remain in the United States and seek lawful permanent resident

2

status if federal authorities conclude that [certain] statutory conditions are met." (*In re Interest of Erick M.* (Neb. Supreme Ct. 2012) 820 N.W.2d 639, 641.) A minor who obtains SIJ status may apply after five years to become a naturalized citizen. (*Zheng v. Pogash* (S.D. Texas 2006) 416 F.Supp.2d 550, 554 [citing federal SIJ status petition guidelines].)

As we explain, the juvenile court's policy conclusions about the general unsuitability of juvenile wards for potential immigration status adjustments were misplaced under the SIJ statute. The statute commits to a juvenile court only the limited, factfinding role of identifying abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned to their home country. The evidence does not support the juvenile court's conclusions on these questions. To the contrary, the evidence overwhelmingly supports Leslie's request for the necessary findings to enable her to file her SIJ application with the appropriate federal authorities. The juvenile court could not reasonably deny her request, and we therefore grant her writ relief to vacate the juvenile court's order and substitute a new and different order sustaining the relevant SIJ factual findings.

I

FACTUAL AND PROCEDURAL BACKGROUND

Garden Grove police officers arrested Leslie in April 2013 after she and two teenage girlfriends attempted to steal two alcoholic beverages and some cigars from a liquor store. The store clerk confronted the girls, who knocked him to the ground, and assaulted him. In the ensuing melee outside the store, Leslie reportedly grabbed a shoe from a neighboring store display and struck the clerk in the face. At her juvenile court adjudication in May 2013, Leslie entered a plea admitting guilt to assault with force

3

likely to produce bodily injury and second degree commercial burglary, and the juvenile court declared her a ward of the court and committed her to juvenile hall for 120 days, with probation terms and supervision upon her release.

In July 2013, Leslie's public defender objected on grounds of confidentiality in juvenile proceedings to the release of any information concerning Leslie to United States Immigration and Customs Enforcement (ICE) officials. When the juvenile court overruled the objection, Leslie filed a request for the court to make the findings necessary under section 1101(a)(27)(J) for her to apply to federal authorities for SIJ status. The court scheduled a hearing in August 2013. Leslie and her grandmother, Sonia V., with whom Leslie lived in Orange County for the last 10 years, submitted declarations and testified.

Grandmother explained Leslie first lived with her as an infant when her mother brought her to the United States when she was nine months old. Mother was unemployed, irresponsible, and a heavy drinker who did not care for Leslie properly. She left Leslie home alone without feeding her, and Leslie's father was largely absent, using drugs and carousing all night. Leslie returned to Mexico when she was about four or five years old. Grandmother received disturbing telephone calls from Leslie that mother continued drinking, leaving her alone at night, sometimes tied to a chair, and that mother hit Leslie often. Leslie begged for her grandmother to rescue her. When Leslie was seven years old, mother returned Leslie to grandmother's care because grandmother threatened to stop sending money to mother. Upon Leslie's return, grandmother immediately noticed Leslie's gaunt, malnourished features. She was no longer happy or energetic, and she suffered nightmares, ate little, cried easily, and was afraid to leave grandmother's side.

4

Leslie testified she did not hear from her mother again after mother deposited her at grandmother's home. Mother never sent any money for her care, nor attempted to communicate with her in any form. In Mexico, mother had abused and neglected her, punching her, slapping her, and hitting her with cables. Mother sometimes terrorized her by striking her with scalding metal spoons, which she boiled to inflict greater pain. Mother was an alcoholic and a drug addict, and Leslie frequently saw her smoke out of a can. Mother gave Leslie alcohol to make her stop crying, frequently left Leslie alone in the apartment at night, and left her with strangers for weeks at a time.

Leslie only recalled meeting her father once, when she was about five years old, and she never lived with him in Mexico or the United States. He never attempted to contact her or send money for her care, and Leslie believed he was incarcerated somewhere in Mexico. Leslie's older brother had lived with grandmother temporarily, but was deported following his arrest for domestic violence and violation of his bail conditions. He made no effort to contact Leslie or send money for her care, and neither Leslie nor grandmother knew his whereabouts.

At the August hearing on Leslie's petition for SIJ findings, the juvenile court reiterated, "She broke the law. She is in custody because she broke the law." The court concluded that if it found Leslie met the factual criteria under section 1101(a)(27)(J) for federal officials to consider adjusting her immigration status, "every time we have a minor detained in juvenile hall they then become eligible for this statute. And that cannot be the law. If that were the law then every minor who is here illegally would have an incentive to commit a crime so they go into custody and then they can state 'I am now a dependent' or 'I am now dependent upon the juvenile court.'"

Leslie's attorney objected that other criteria had to be met, pointing out SIJ applicants must present evidence they were abused, neglected, or abandoned and cannot safely reunify with their parents. Another factor requires evidence repatriation would not be in the child's best interest. The attorney also expressed confidence federal authorities could weed out applications submitted with improper "motivation . . . to create [immigration] eligibility," and she observed, "no ethical immigration attorney could file a case with [the] immigration service if the whole purpose . . . was to make someone eligible for immigration benefits." The juvenile court, however, was not persuaded, labeling potential SIJ eligibility for a juvenile ward "an absurd result, . . . inconsistent with Congress' intent . . . ."

The juvenile court similarly rejected Leslie's other requested SIJ findings. "The second criter[ion], whether or not reunification is viable or not, I am not prepared to make a finding that reunification is not viable. I don't believe I have sufficient credible evidence to make a determination in regards to that particular fact. I have got the testimony of Leslie, who has admitted three theft allegations, one of them a felony. I don't place a lot of weight on her credibility, quite frankly. I am not prepared to find that reunification is not viable." The court did not address grandmother's testimony and made no finding she was not credible.

The juvenile court continued: "The third criter[ion is] whether or not it would be in her best interest to return to the country of her nationality. She has been in the United States for some period of time. She has not gone to school. . . . She has suffered a juvenile conviction for what would constitute a serious or violent felony. [¶] If she continues with the same type of behavior that she has engaged in the last year, year and a half, she is going to find herself in state prison. . . . [¶] I am hard-pressed to find

that staying in the United States would further serve her interests.  If she were attending school, if she was leading a law abiding productive life, if she was taking advantage of the opportunities that she has, it would be a lot easier to make a finding that returning her to Mexico would be contrary to her welfare.  [A]nd not in her best interest."

The court concluded:  "Frankly, at this point I think going back to Mexico would be in her best interest because the path that she is on right now is one that is going to lead to self-destruction.  It has been this court's experience that on a number of occasions parents who have minors who have encountered difficulty with the law, who have roots in Mexico, send their children back to Mexico to get them out of the negative environment that has placed them in the juvenile court. . . .  [¶] . . . [¶]  So taking into consideration all three of these criteria, I am declining to make the findings requested by the moving party."

Leslie now files this writ petition to overturn the juvenile court order denying her requested SIJ findings.  The district attorney filed an informal letter in which he declined to file a traverse because the People do not oppose Leslie's requested relief.

II

DISCUSSION

Leslie contends the juvenile court erred in failing to find she met the factual requirements for SIJ classification under federal law.  We review a trial court's factual findings for substantial evidence (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632), and the applicable law de novo.  (*Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622 (*Eddie E.*)  "In construing a federal statute, '"we look first to the plain language of the statue, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress."'"  (*Shirey v. Los Angeles County*

7

*Civil Service Com.* (2013) 216 Cal.App.4th 1, 20.) "If the intent of Congress is clear, that is the end of the matter . . . ." (*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.* (1984) 467 U.S. 837, 842-843 (*Chevron*).)

"While the federal government has exclusive jurisdiction with respect to immigration [citations], state juvenile courts play an important and indispensable role in the SIJ application process." (*In re Mario S.* (N.Y.Fam.Ct. 2012) 954 N.Y.S.2d 843, 849 (*Mario S.*).) Under section 1101(a)(27)(J) and its implementing regulations codified at 8 Code of Federal Regulations part 204.11, "state juvenile courts are charged with making a preliminary determination of the child's dependency and his or her best interests, which is a prerequisite to an application to adjust status as a special immigrant juvenile. 'The SIJ statute affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests' [citations]." (*Mario S.*, at p. 849.)

Federal regulations currently provide that an alien child subject to deportation is eligible to apply for reclassification by the United States Customs and Immigration Services (USCIS), the federal agency charged with enforcing immigration laws, as a "special immigrant" instead of an alien if a state juvenile court first makes certain findings. Those findings include that the child: "(1) Is under twenty-one years of age; [¶] (2) Is unmarried; [¶] (3) Has been declared dependent upon a juvenile court located in the United States in accordance with state law governing such declarations of dependency, while the alien was in the United States and under the jurisdiction of the court; [¶] (4) Has been deemed eligible by the juvenile court for long-term foster care; [¶] (5) Continues to be dependent upon the juvenile court and eligible for long-term foster care, such declaration, dependency or eligibility not having been vacated, terminated, or

8

otherwise ended; and [¶] (6) Has been the subject of judicial proceedings or administrative proceedings authorized or recognized by the juvenile court in which it has been determined that it would not be in the alien's best interest to be returned to the country of nationality or last habitual residence of the beneficiary or his or her parent or parents . . . ." (8 C.F.R. § 204.11(c) (2014).)

Apart from nonsubstantive changes in 2009 (see 74 Fed.Reg. 26937 (June 5, 2009)), these regulations were last updated in 1993 and therefore have not "kept pace" with intervening Congressional amendments. (*In re Minor Children of J.E.* (N.J. Super.Ct. 2013) 74 A.3d 1013, 1017, fn. 5 (*Minor Children of J.E.*).) "Accordingly, those portions of the regulation that conflict with the current statute are no longer valid." (*Ibid.*, citing *Chevron*, *supra*, 467 U.S. 837, 842-844 [agency regulations are generally controlling unless contrary to statute].)

Under Congress's latest amendment in 2008, for example, "'the eligibility requirements . . . hinge primarily on a reunification determination. The amendment expanded eligibility to include juvenile immigrants whom a court has committed to or placed in the custody of an individual or a state-appointed entity. . . . Finally, Congress removed the requirement that a state juvenile court find that a juvenile is eligible for long-term foster care because of abuse, neglect, or abandonment. Instead, a court must find that reunification is not possible because of abuse, neglect, or abandonment.' [Citation.]" (*Mario S.*, *supra*, 954 N.Y.S.2d at pp. 848-849.)

Specifically, the SIJ statute now provides in pertinent part: "The term 'special immigrant' means—[¶] . . . [¶] (J) an immigrant who is present in the United States—[¶] (i) who has been declared dependent on a juvenile court located in the United States *or whom such a court has legally committed to*, or placed under the custody of, *an*

9

*agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States*, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; [¶] (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and [¶] (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status, . . . [with certain inapplicable exceptions]." (8 U.S.C. § 1101(a)(27)(J), italics added.)

Congress's expansion of SIJ status eligibility beyond notions of dependency restricted to long-term foster care or similar arrangements is reflected in proposed regulation changes that specify: "The use of the term 'dependency' throughout this proposed rule *encompasses* dependency, *commitment, or custody* as provided in amended section 101(a)(27)(J)(i) of the Act, 8 U.S.C. 1101(a)(27)(J)(i)." (76 Fed. Reg. 54980 (Sept. 6, 2011), italics added.) While the proposed regulations have not yet taken effect, the statutory changes are themselves the best indicators of Congress's intent. As one court has explained, "As a result of the removal of the foster care requirement, state courts may now make SIJ [status] findings whenever jurisdiction can be exercised under state law to make care and custody determinations, and are no longer confined to child protection proceedings alone." (*Minor Children of J.E.*, *supra*, 74 A.3d at p. 1018.)

More precisely, as another panel of this court observed in *Eddie E.*, under the 2008 amendment to section 1101(a)(27)(J), "The first part of [subsection] (i) is phrased in the disjunctive. [Citation.] Thus, a court must find either that an immigrant has been (a) 'declared dependent on a juvenile court' *or* (b) 'legally committed to, or

10

placed under the custody of' a state agency or department or 'an individual or entity appointed by a State or juvenile court located in the United States.' [Citation.] Once *either* of those findings are made, the court must then '"ma[k]e two additional findings: (1) that reunification with one or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law; and (2) that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence."' [Citation.]" (*Eddie E.*, *supra*, 223 Cal.App.4th at pp. 627-628, original italics and bracket.)

In *Eddie E.*, the juvenile court failed to reach the second and third SIJ criteria concerning, respectively, the viability of reunification due to abuse and whether the child's best interests included returning to his or her home country. The juvenile court did not consider these '"two additional"' criteria under the mistaken impression the first criterion in subsection (i) of section 1101(a)(27)(J) is met only by a dependency determination under Welfare and Institutions Code section 300, and not a delinquent ward finding under Welfare and Institutions Code section 602. We explained to the contrary under the express terms of the SIJ statute that as "an alternative basis" to dependency, an "alien in petitioner's position may also demonstrate he had been 'legally committed to, or placed in the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States.' [Citation.]" (*Eddie E.*, *supra*, 223 Cal.App.4th at pp. 627-628, quoting 8 U.S.C. § 1101(a)(27)(J)(i).) We therefore issued a writ of mandate for the juvenile court to conduct a new hearing to "consider[] and mak[e] findings on this alternative basis" and "on the remaining requested findings of fact necessary for SIJ status . . . ." (*Eddie E.*, *supra*, 223 Cal.App.4th at pp. 628-629.)

11

Here, the juvenile court considered each of the SIJ criteria, but declined on misplaced policy considerations to make the necessary factual findings, despite ample, uncontroverted evidence supporting the findings. Specifically, the court concluded Congress could not have intended juvenile wards may qualify for SIJ status because Leslie "broke the law," and "rewarding" her illegal conduct might motivate other undocumented alien children to commit offenses to gain eligibility for SIJ status and eventual nationalization.

The juvenile court erred. A state court's role in the SIJ process is not to determine worthy candidates for citizenship, but simply to identify abused, neglected, or abandoned alien children under its jurisdiction who cannot reunify with a parent or be safely returned in their best interests to their home country. As *Mario S.* aptly observed, the SIJ statute and accompanying regulations "commit . . . specific and limited issues to state juvenile courts. The juvenile court need not determine any other issues, such as what the motivation of the juvenile in making application for the required findings might be [citations]; whether allowing a particular child to remain in the United States might someday pose some unknown threat to public safety [citation]; and whether the USCIS, the federal administrative agency charged with enforcing the immigration laws, may or may not grant a particular application for adjustment of status as a SIJ." (*Mario S.*, *supra*, 954 N.Y.S.2d at pp. 852-853.)

*Mario S.* further explained that if "the USCIS denies a juvenile alien's application for legal permanent residence as a special immigrant juvenile," the juvenile's remedy lies not in state court, but instead "to seek review of the agency's decision in federal court [citations]." (*Id.* at fn. 7.) State courts play no role in the final determination of SIJ status or, ultimately, permanent residency or citizenship, which are

12

federal questions. Indeed, far from incentivizing illegal conduct as the juvenile court speculated, an alien minor's chance for a permanent home in the United States may inspire his or her reform, but these are matters for immigration authorities to evaluate.

In sum, immigration policy considerations and their final adjudication in a particular case are "beyond the scope of what a state juvenile court is required to decide upon a motion for special findings which are a prerequisite to the filing of an application to adjust the juvenile alien's immigration status. Nothing in 8 USC § 1101(a)(27)(J) or the regulation[s] indicates that the Congress intended that state juvenile courts pre-screen potential SIJ applications for possible abuse on behalf of the USCIS." (*Mario S.*, *supra*, 954 N.Y.S.2d at p. 853.) Rather, "[t]he juvenile court is simply called upon to determine" discrete factual issues, including "whether, under state law, the juvenile is under the age of 21, unmarried, dependent upon the court through an order of placement or other court order, whether reunification with one or both of the juvenile's parents is not possible due to abuse, neglect, or abandonment of the child, and whether it would be contrary to the juvenile's best interest to be returned to his or her previous country of nationality." (*Id.* at p. 852.)

In *Mario S.*, the court determined a minor alien adjudicated a delinquent, placed in juvenile hall, and committed upon release to ongoing child welfare agency supervision qualified under section 1101(a)(27)(J)(i) as a child in dependent, committed, or custodial care. (*Mario S.*, *supra*, 954 N.Y.S.2d at pp. 850-851.) The same is true here. Leslie filed her petition for the juvenile court to make the requisite SIJ findings while in juvenile custody, and she remained in custody through the hearing. She also remained subject to continued juvenile court jurisdiction and supervision on probation terms upon her eventual release.

Leslie argues that in addition to her ongoing commitment status, she established the other factors comprising state court SIJ findings, and the juvenile court erred in concluding otherwise. We agree. The juvenile court concluded it was "not prepared to make a finding that reunification is not viable." The court couched its conclusion in terms of Leslie's credibility, but the court made no such finding concerning grandmother's uncontradicted account of mother's lifelong abuse and father's abandonment. The juvenile court's misplaced policy conclusions may have improperly colored its reunification finding. In any event, the facts overwhelmingly establish Leslie's reunification with one or both her parents was not viable due to abuse, neglect, and abandonment.

Similarly, nothing in the record supported the juvenile court's conclusion that repatriation to Mexico was in Leslie's best interests. The court based its finding on anecdotal impressions, untethered to any evidence in this case, that parents of troubled immigrant children may sometimes "send their children back to Mexico to get them of out of the negative environment that has placed them in the juvenile court." But the juvenile court ignored that Leslie as an unaccompanied minor had no one to return to safely in Mexico. Her father had abandoned her, her mother neglected her while an infant and abused her upon her return to Mexico, and her older brother had been deported after violating bail terms following an arrest for domestic violence; he maintained no contact with his sister, disappearing entirely from her life. By all accounts, Leslie's grandmother was her only refuge. On this record, the juvenile court could not reasonably conclude it was in Leslie's best interests to be sent back to Mexico alone and with no one to care for her.

14

## III

## DISPOSITION

Let a writ of mandate issue commanding respondent Superior Court of Orange County to vacate its order of August 14, 2013, denying petitioner's application for SIJ status findings. The juvenile court is directed to enter a new and different order sustaining as of August 14, 2013, the requisite state court findings to enable petitioner to file her SIJ application with the appropriate federal authorities. Each party shall bear its own costs of this writ proceeding.

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　ARONSON, J.

WE CONCUR:


_____
RYLAARSDAM, ACTING P. J.


_____
FYBEL, J.