Filed 9/28/21 (unmodified opinion attached)

## CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Guardianship of S.H.R.<br><br>_____<br><br>S.H.R.,<br><br>    Petitioner and Appellant,<br><br>    v.<br><br>JESUS RIVAS et al.,<br><br>    Real Parties in Interest. | B308440<br><br>(Los Angeles County<br>Super. Ct. No. 19AVPB00310)<br><br>ORDER MODIFYING OPINION AND DENYING APPELLANT'S PETITION FOR REHEARING (NO CHANGE IN JUDGMENT) |

THE COURT:

The opinion in the above-entitled matter filed on September 2, 2021, is modified as follows:

1.     On page 1, the caption of the published opinion is revised to reference the parties Jesus Rivas et al. as the Real Parties in Interest (see above-referenced caption).  Additionally, on that same page, the last line of the appearances is revised to read:  No appearance for Real Parties in Interest.

2. On page 4 in the first sentence of the second paragraph of the FACTUAL AND PROCEDURAL SUMMARY, the phrase "then 18 years old" is deleted and replaced with: then 17 years old.

3. On page 5, the first sentence of the first complete paragraph is deleted and replaced with the following sentence:

> On December 3, 2019, S.H.R.—then 18 years old—filed a petition for special immigrant juvenile findings (the SIJ petition) in the superior court.

These modifications do not constitute a change in the judgment.

Appellant S.H.R.'s petition for rehearing filed September 17, 2021 is denied.

_____

ROTHSCHILD, P. J.        CHANEY, J.        BENDIX, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| Guardianship of S.H.R. <br><br> ——————————————— <br><br> S.H.R., <br><br>  Petitioner and Appellant, <br><br>  v. <br><br> JESUS RIVAS et al., <br><br>  Objectors and Respondents. | B308440 <br><br> (Los Angeles County <br> Super. Ct. No. 19AVPB00310) |

APPEAL from orders of the Superior Court of Los Angeles County, Scott J. Nord, Judge Pro Tempore.  Affirmed.

Horvitz & Levy, Jason R. Litt, David S. Ettinger, Anna J. Goodman; Immigrant Defenders Law Center, Bhairavi Asher and Abigail Ward Lloyd for Petitioner and Appellant.

Akin Gump Strauss Hauer & Feld, Rex S. Heinke, Jessica M. Weisel, and Joshua D. Tate for Public Counsel as Amicus Curiae on behalf of Petitioner and Appellant.

No appearance for Objectors and Respondents.

S.H.R. filed petitions in the superior court for the appointment of a guardian of his person (the guardianship petition; Prob. Code, § 1510.1) and for judicial findings that would enable him to petition the United States Citizenship and Immigration Services (USCIS) to classify him as a special immigrant juvenile (SIJ) under federal immigration law (the SIJ petition; Code Civ. Proc.,[1] § 155).  The court denied the SIJ petition and denied the guardianship petition as moot.

As we explain below, S.H.R. had the burden of proving by a preponderance of the evidence the facts supporting SIJ status.  Because the trial court found his evidence did not support the requested findings, S.H.R. has the burden on appeal of showing that he is entitled to the SIJ findings as a matter of law.  For the reasons discussed below, he has not met his burden.  We therefore affirm the order denying the SIJ petition.  Because the denial of the SIJ petition rendered the guardianship petition moot, we also affirm the order denying that petition.

### SPECIAL IMMIGRANT JUVENILE STATUS

In the Immigration Act of 1990 and subsequent amendments, Congress established the SIJ classification of immigrants and a path "to protect abused, neglected, and abandoned unaccompanied minors through a process that allows them to become permanent legal residents."  (*In re Y.M.* (2012) 207 Cal.App.4th 892, 915; see 8 U.S.C. §§ 1101(a)(27)(J), 1153(b)(4), 1255(a) & (h); *Bianka M. v. Superior Court* (2018) 5 Cal.5th 1004, 1012−1013.)  The USCIS may consent to grant

---

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

SIJ status to an unmarried immigrant under 21 years of age if the immigrant is in the custody of an individual appointed by a state court with jurisdiction to determine the custody and care of juveniles, and that court makes two findings: (1) reunification with one or both of the immigrant's parents "is not viable due to abuse, neglect, abandonment, or a similar basis found under [s]tate law"; and (2) it is not in the immigrant's best interest to return to his or her home country or the home country of his or her parents. (8 U.S.C. § 1101(a)(27)(J) & (b)(1); see 8 C.F.R. § 204.11(a) (2021); *Eddie E. v. Superior Court* (2013) 223 Cal.App.4th 622, 627−628.)

In 2014, the California Legislature enacted section 155 (Stats. 2014, ch. 685, § 1, pp. 4485−4486), which confers jurisdiction on every California superior court—including its juvenile, probate, and family court divisions—to make the findings necessary to petition the USCIS for SIJ status. (§ 155, subd. (a); *Bianka M.*, *supra*, 5 Cal.5th at p. 1013.) The statute further provides that "[i]f an order is requested from the superior court making the necessary findings regarding special immigrant juvenile status . . . , and there is evidence to support those findings, which may consist solely of, but is not limited to, a declaration by the child who is the subject of the petition, the court shall issue the order." (§ 155, subd. (b)(1).)

The following year, the Legislature enacted Probate Code section 1510.1, which grants courts the power to "appoint a guardian of the person for an unmarried individual who is 18 years of age or older, but who has not yet attained 21 years of age, in connection with a petition to make the necessary findings regarding [SIJ] status." (Prob. Code, § 1510.1, subd. (a); Stats. 2015, ch. 694, § 3, p. 5330.) The appointment of a guardian

3

under this statute may satisfy the requirement under the SIJ law that the immigrant be "placed under the custody of . . . an individual . . . appointed by a [s]tate or juvenile court." (8 U.S.C.A. § 1101(a)(27)(J)(i); *J.L. v. Cissna* (N.D.Cal. 2019) 374 F.Supp.3d 855, 867; *Matter of A-O-C-*, USCIS Adopted Decision 2019-03 (AAO, Oct. 11, 2019) 2019 WL 5260453, pp. *4−*5.)[2]

## FACTUAL AND PROCEDURAL SUMMARY

S.H.R. was born in El Salvador in December 2001. He left El Salvador in June 2018 and arrived in the United States in August 2018. In January 2019, he moved in with his maternal cousin's husband, Jesus Rivas, in Palmdale.

In September 2019, S.H.R.—then 18 years old—filed a petition in the superior court for appointment of Rivas as guardian of his person (the guardianship petition). S.H.R. stated in the petition that Rivas has been caring for him "since he arrived [in] the United States" and has provided him with "shelter, food, and other vital necessities." The guardianship, he asserted, "will promote stability for [him] as he adjusts to life in

---

[2] The appointment of a guardian under Probate Code section 1510.1 and the judicial findings described in section 155 do not guarantee USCIS's consent to SIJ status. (See *Reyes v. Cissna* (4th Cir. 2018) 737 Fed.Appx. 140, 146 [USCIS may withhold its consent to SIJ status if the petitioner's state court request for SIJ findings was not "bona fide"]; *Matter of E-A-L-O-*, USCIS Adopted Decision 2019-04 (AAO, Oct. 11, 2019) 2019 WL 5260455, pp. *8−*9; *id.* at p. *9 [USCIS need not consent to SIJ status where petitioner failed to show that he sought the state court finding "for any reason other than to enable him to file his petition for SIJ classification"].)

4

the United States."  Rivas consented to be S.H.R.'s guardian and S.H.R.'s parents consented to Rivas's appointment as guardian.

On December 3, 2019, S.H.R. filed a petition for special immigrant juvenile findings (the SIJ petition) in the superior court.  The SIJ petition states that reunification with S.H.R.'s "parents is not viable under California law because of . . . [¶] . . . [¶] neglect [and] [¶] abandonment," and that it is not in his best interest to be returned to El Salvador.

S.H.R. supported the petition with his declaration setting forth the following facts.

Prior to coming to the United States, S.H.R. lived in El Salvador with his parents, two younger brothers, a younger sister, and his maternal grandfather.  His two older sisters had left for the United States a few months before him and are living in San Francisco.  His mother and grandfather do not work, and his father had been unable to find work for "a couple of years."  The family depends mostly on S.H.R. and his older sisters for money.

Beginning at the age of 10 and continuing until he was 15, S.H.R. helped his grandfather by "working in the fields" during the summer, collecting fruit and vegetables "under the sun for six to seven hours every day."  After work, he "would be completely exhausted."  He used the money his grandfather paid him to buy necessities, such as food, clothing, and shoes.

One day, when S.H.R. was in ninth grade, two gang members approached him outside of school.  They told him he needed to join the gang, but S.H.R. refused.  The men told S.H.R. that if he did not join the gang, they would kill him or his family.  This made S.H.R. "very afraid," and he told his parents about the incident.  His father reported the incident to the police.  S.H.R.

5

did not hear from the police again and his parents did not follow up with them.

A few weeks later, the two gang members met S.H.R. after school again and threatened to kill him and his family if he refused to join their gang. He reported the incident to his parents, who informed the police. As with the first incident, the police did nothing and his parents did not follow up. S.H.R. believes that the "police are afraid of the gang members, who will go after them or their family members if they investigate the incidents."

S.H.R. feared that gang members would wait for him again after school. His parents then "made [him] stop going to school and start working." This meant that he would not graduate from high school.

S.H.R. began working at a car wash every day from 8:00 a.m. to 6:00 p.m. He used half the money he earned "to buy food for [his] parents, grandfather, and younger siblings," and saved the rest.

After a few months of working at the car wash, a gang member approached S.H.R. and asked him to pay a "gang tax." The man threatened that S.H.R. would "disappear" if he did not cooperate.

S.H.R. was afraid of the gang member and told his parents he wanted to leave the country. His parents told him "it would be too dangerous for [him] to go" and "insisted [he] stay." He felt that his parents could not protect him, yet would not let him leave.

S.H.R. knew of three people in his neighborhood who had been killed by gang members and he "lived in constant fear that

the gang members would return to [his] work and kidnap or kill [him]."

S.H.R. saved money to pay for a trip to the United States and, in June 2018, he left El Salvador without telling his parents.

S.H.R. is afraid that if he returned to El Salvador, the "gang members will come after [him] again with threats of violence, or even kill [him]," and his "parents are not able to protect [him]."

At a hearing held on June 25, 2020, the court indicated that the SIJ petition provided no basis for granting the petition. The court, however, granted S.H.R.'s request to submit a brief and granted the guardianship petition.

S.H.R. thereafter submitted a brief in which he argued that his "parents neglected him under California law when they failed to provide for his support resulting in harm to [his] health and welfare." In particular, his "parents consented to him spending his summers working in the fields when he was ten years old, doing difficult, exhausting work." His parents also "forced him to stop attending school and to instead spend his childhood days working tirelessly," including "working full-time at a car wash."[3]

S.H.R. also submitted proposed SIJ findings that include the finding, among others, that his "parents neglected and abandoned him by failing to provide him with adequate care and

---

[3] S.H.R. attached to his supplemental brief a purported psychological evaluation of S.H.R. The document is not authenticated and it was neither offered nor admitted into evidence at the hearing. Nor does it appear from our record that the probate court considered it. Because it was not authenticated or introduced into evidence, we do not consider it.

protection" and that he "was forced to work starting from a young age using dangerous equipment."[4]

On August 25, 2020, the probate court denied the SIJ petition. In its statement of decision, the court explained that "nothing in [S.H.R.'s] petition or declaration supports any finding that he was abandoned in any respect under California law" (capitalization omitted), and the conduct of S.H.R.'s parents did not "meet the definition of 'neglect' under California law." The court further stated that "[t]he [p]etition does not state, and no evidence is provided, which suggests that[,] should [S.H.R.] be returned to El Salvador[,] reunification with one or both parents[,] absent a finding of other factors[,] is not possible or viable." Moreover, the facts S.H.R. alleged "dealt with issues that arose while he was a minor. However, he is no longer a minor. As such, the [c]ourt cannot conclude that those issues will continue to exist."

Based on the denial of the SIJ petition, the court denied the guardianship petition as moot.

S.H.R. filed a notice of appeal from the probate court's August 25, 2020 order, as well as a petition in this court for writ of mandate or prohibition. We granted his request to treat his writ petition as his opening brief on appeal and the exhibits accompanying the writ petition as his appellant's appendix. No respondent's brief has been filed.

---

[4] S.H.R. submitted his proposed findings on Judicial Council form No. FL-357/GC-224/JV-357 [rev. July 1. 2016].

8

We granted a request by Public Counsel to file an amicus brief in support of S.H.R.[5]

**DISCUSSION**

### A.  *Appealability*

At least one appellate court has reviewed the denial of a petition for SIJ findings as an appealable order.  (*In re Israel O.* (2015) 233 Cal.App.4th 279, 283.)  Other courts have done so through writ proceedings.  (*Bianka M., supra,* 5 Cal.5th at p. 1015; *O.C. v. Superior Court* (2019) 44 Cal.App.5th 76, 82 (*O.C.*); *Leslie H. v. Superior Court* (2014) 224 Cal.App.4th 340, 343 (*Leslie H.*).)  The cases do not discuss whether an appeal or a writ petition is the proper vehicle to obtain appellate review of an order denying a petition for SIJ findings.  We hold that the order is appealable.

"A reviewing court has jurisdiction over a direct appeal only when there is (1) an appealable order or (2) an appealable judgment."  (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.)  "A judgment is the final determination of the

---

[5] Amicus Public Counsel filed in this case a request for judicial notice of three documents:  A declaration filed by certain California legislators filed in another California appellate court proceeding; a declaration filed by a social worker in a federal district court; and so-called "compliance reports" filed by USCIS in a federal district court.  The documents are offered for the truth of statements made therein.  Therefore, although the first was filed in a state court and the other two were filed in federal courts (Evid. Code, § 452, subd. (d)), we deny the request for judicial notice by separate order.  (See *Bennett v. Regents of University of California* (2005) 133 Cal.App.4th 347, 358, fn. 7; *Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1564–1565, 1568.)

rights of the parties." (*Id.* at p. 697.) An order by the superior court may constitute an appealable judgment if it disposes of all causes of action pending in the case. (See *ibid.*) "As a general test," an order is final and appealable when "no issue is left for future consideration except the fact of compliance or noncompliance with the terms" of the order. (*Id.* at p. 698.)

Here, S.H.R. filed his SIJ petition pursuant to section 155 for the purpose of obtaining the findings authorized by that section. The court's order denying the requested findings completely disposes of the matter before it and leaves no further issues to be resolved. (See *Estate of Miramontes-Najera* (2004) 118 Cal.App.4th 750, 755 [holding that a probate court's order denying a request to set aside community property transfers was appealable as a final judgment because it had "all the earmarks of a final judgment," leaving nothing further for judicial consideration].) Thus, the court's order denying the SIJ petition is the equivalent of a final, appealable judgment and we therefore consider S.H.R.'s appeal from the order.[6] In doing so, we recognize that review by writ petition also may be appropriate under the circumstances of a given case. (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 91, p. 153 [even if a judgment or order is appealable, review by writ may be available where the remedy by appeal is inadequate].)

_____

[6] We will deny the writ petition in *S.H.R. v. Superior Court* (case No. B308307) as moot by separate order.

**B.** *The Order Denying the SIJ Petition*

**1.** *Burden of proof and standard of review*

As the party requesting SIJ findings, S.H.R. had the burden of proof in the trial court. (Evid. Code, § 500; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861 [generally, "the 'party desiring relief' bears the burden of proof"].) Because section 155 does not specify a burden of proof, the burden is "proof by a preponderance of the evidence." (Evid. Code, § 115.)[7]

Here, the trial court concluded that S.H.R. had not met his burden of proving the facts necessary to make the SIJ findings under section 155, including the finding that his reunification with one or both parents is not viable "because of abuse, neglect, abandonment, or a similar basis pursuant to California law." (§ 155, subds. (a)(2) & (b)(1)(B).) The court therefore rejected S.H.R.'s request to make this finding, and denied S.H.R.'s petition.

When an appellant challenges a trial court's factual findings on appeal, our review will ordinarily be governed by the substantial evidence standard of review. (See generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶¶ 8:43 to 8:44.) When, as here, however, "the party who had the burden of proof in the [trial] court contends the court erred in making findings against [him], 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the

_____

[7] Evidence Code 115 provides: "Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence."

11

appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 904; quoting, *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527−1528; accord, *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)[8]

S.H.R. views the role of the trial court under section 155 and, consequently, our standard of reviewing the court's ruling, differently. According to him, the "role of the superior court" in evaluating a SIJ petition under section 155 is "to determine . . . whether there is evidence that *could* support a ruling in favor of the petitioner." For this assertion, S.H.R. relies on a statement in *O.C.*, *supra*, 44 Cal.App.5th 76, that, "if substantial evidence supports the requested SIJ findings, the issuance of the findings is mandatory." (*Id.* at p. 83.) We disagree.

The *O.C.* court had no occasion to consider either the petitioner's burden of proof in the trial court or the trial court's standards for evaluating the petitioner's evidence. Indeed, the petitioner's evidence played no part in the court's analysis. The statement from the opinion that S.H.R. relies upon—"if substantial evidence supports the requested SIJ findings, the issuance of the findings is mandatory"—is therefore dicta. (*O.C.*,

_____

[8] S.H.R. and amicus devote much of their briefs to challenging the trial court's reasoning and its reliance on cases addressing the termination of parental rights under juvenile dependency law. We review the court's order, however, not its reasoning, and may affirm the order if it is correct on any theory of applicable law. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18−19.)

*supra*, 44 Cal.App.5th at p. 83.)  For the following reasons, we decline to follow it.

For the quoted statement, the *O.C.* court relied solely on subdivision (b)(1) of section 155, set forth above, which makes no reference to "substantial" evidence.  The court's statement is otherwise made without analysis or citation to authority.  (*O.C.*, *supra*, 44 Cal.App.5th at p. 83.)  Indeed, there is nothing in the statute's text or its legislative history to support the statement, and it has not been followed in any other published decision.[9]

The *O.C.* court's reference to "substantial evidence" also suggests a standard that is inconsistent with the trial court's factfinding task under section 155.  Under that section, the court must determine whether the petitioner has proved particular facts, such as parental maltreatment of the petitioner and the nonviability of reunification.  (See *J.L. v. Cissna, supra*, 374 F.Supp.3d at p. 866 [the reunification finding under section 155 "is inherently factual"].)  "The substantial evidence test," however, "does not ask what proposed facts are more likely than not to be the true facts" (*Wollersheim v. Church of Scientology* (1999) 69 Cal.App.4th 1012, 1017); rather, it is aimed at

---

[9] S.H.R. also relies on the Supreme Court's statement in *Bianka M.* that, under section 155, subdivision (b)(1), "a superior court 'shall' issue an order containing SIJ findings if there is evidence to support them."  (*Bianka M., supra*, 5 Cal.5th at p. 1025.)  The *Bianka M.* court, however, was concerned with the question whether the trial court could consider evidence of the petitioner's motivation in seeking SIJ findings, and concluded that such evidence is irrelevant.  (*Ibid.*; see § 155, subd. (b)(2).)  The court did not address the petitioner's burden of proof or suggest that that burden was less than proof by a preponderance of evidence.

determining a legal issue:  Whether there is substantial evidence to support factual findings.  (See *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1515 [the existence or nonexistence of substantial evidence is a question of law].)  Thus, a determination by the trial court that the petitioner has produced substantial evidence that could support a finding under section 155 is not a factual finding at all.  Because section 155 requires factual findings, we reject the *O.C.* court's "substantial evidence" standard at the trial court level.

Furthermore, a substantial evidence standard would not satisfy the federal requirement that the state court actually find the required facts.  (See *Osorio-Martinez v. Att, Gen. U.S. of America* (3d Cir. 2018) 893 F.3d 153, 169 [SIJ eligibility "requires the state court to find" that reunification " 'is not viable due to abuse, neglect, abandonment, or a similar basis found under State law' "].)  The SIJ petitioner must thus present "evidence of a judicial determination that the juvenile *was subjected to*" parental maltreatment, not a determination that the juvenile could have been subjected to maltreatment.  (*Matter of E-A-L-O-*, USCIS Adopted Decision 2019-04, *supra*, 2019 WL 5260455, p.*6, italics added; see *Reyes v. Cissna*, *supra*, 737 Fed.Appx. at p. 146; *id*. at p. 144 [affirming summary judgment against SIJ applicant where the state court failed to make " '*specific factual findings regarding* the basis for finding abuse, neglect, or abandonment' "].)  Because section 155 was enacted to aid juveniles in obtaining SIJ status under federal law, we reject a construction of the statute that would not support the federal standard for SIJ status.

For the foregoing reasons, we reject S.H.R.'s argument that he needed merely to produce "substantial evidence" that could

14

support the required findings, and hold that he was required to prove by a preponderance of the evidence the existence of the facts specified in section 155. Under these circumstances, where the court considered the evidence and concluded that S.H.R. had failed to prove the existence of such facts, we review the court's ruling denying the requested findings to determine whether S.H.R. is entitled to the requested findings as a matter of law.

## 2. *S.H.R.'s failure to prove parental abandonment or neglect*

S.H.R. and amicus rely on S.H.R.'s declaration evidence in arguing that his parents abandoned and neglected him because: (1) between the ages of 10 and 15, he was required to perform exhausting agricultural field work during the summers under difficult conditions; (2) gang members threatened him and his family and, because of these threats, his parents required that he discontinue his high school education and work at a car wash; and (3) his parents did not provide him with financial support.

We may quickly dispose of the argument that S.H.R.'s parents abandoned him. According to S.H.R., he lived with both of his parents from his birth until he left El Salvador in June 2018. Although he stated that his mother does not work and his father had "not been able to find work for a couple of years," he does not state that his parents had ever left him without provision for his care or supervision. (See Fam. Code, § 3402, subd. (a).) Nor is there any evidence that either parent ever deserted or intended to abandon S.H.R. (Fam. Code, § 7822, subd. (b); see *In re Guardianship of Rutherford* (1961) 188 Cal.App.2d 202, 206 [abandonment requires " ' "an actual desertion, accompanied with an intention to entirely sever, so far as it is possible to do so, the parental relation and throw

15

off all obligations growing out of the same" ' "].)  Indeed, when S.H.R. raised the subject of leaving the country, his parents insisted that S.H.R. stay with them.  Ultimately, S.H.R. disregarded his parents' advice and left home "without telling them."  His separation from his parents was thus the fulfillment of his intention and action, not the result of abandonment by his parents.

We also conclude that S.H.R. has failed to satisfy his burden on appeal of showing that, as a matter of law, his parents committed neglect against him.  Neglect is not defined in section 155.  S.H.R. and amicus point to several definitions of neglect under California law.  For purposes of the Child Abuse and Neglect Reporting Act, neglect is defined as "the negligent treatment or the maltreatment of a child by a person responsible for the child's welfare under circumstances indicating harm or threatened harm to the child's health or welfare."  (Pen. Code, § 11165.2.)  The same law distinguishes " '[s]evere neglect' " and " '[g]eneral neglect,' " and defines the latter as "negligent failure of a person having the care or custody of a child to provide adequate food, clothing, shelter, medical care, or supervision where no physical injury to the child has occurred."  (*Id.*, subd. (b).)

Under a law enacted for protection of the elderly, neglect is defined to include "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise."  (Welf. & Inst. Code, § 15610.57, subd. (a)(1).)

Although the statutes describing the circumstances supporting juvenile dependency jurisdiction do not define neglect, our Supreme Court has interpreted the term in that context

16

as having its "commonly understood" meaning of a " 'failure or inability . . . to adequately supervise or protect' " the parent's child. (*In re R.T.* (2017) 3 Cal.5th 622, 629; see also *In re Ethan C.* (2012) 54 Cal.4th 610, 627−628.)

S.H.R. contends that his parents committed neglect because, between the ages of 10 and 15, he "spent [his] entire summers working in the fields helping [his] grandfather" for six to seven hours every day "under the hot weather."[10] As S.H.R. asserts, such work may be prohibited under California law. (See Lab. Code, § 1290.)[11] Nevertheless, a violation of that prohibition does not necessarily constitute neglect by the child's parents under the foregoing definitions. S.H.R. was apparently working with his parents' consent under the auspices of his grandfather and for the purpose of helping his parents provide for his family. Even if a court could reasonably infer parental neglect from such evidence, the court could also reasonably infer that, because his parents were impoverished, allowing S.H.R. to earn money by helping his grandfather in the fields during

---

[10] S.H.R. asserts in his brief on appeal that during his time as a child farmworker, he used a machete, suffered sunburn, dehydration, and exhaustion, was exposed to pesticides, snakes, scorpions, and harmful insects, and worked without running water or toilet facilities. These facts, however, are not found in S.H.R.'s declaration and are apparently based on statements in an inadmissible "psychological evaluation," which we do not consider. (See fn. 3, *ante*.)

[11] Although a child is permitted to work on a farm owned, operated, and controlled by the child's parent (Lab. Code, § 1394, subd. (a)), it does not appear from the record that S.H.R.'s parents owned, operated, or controlled the farm on which S.H.R. was "helping [his] grandfather."

17

summers was, under the circumstances, a reasonable parental decision that enabled the family to provide for S.H.R. without interfering with his education. The evidence of S.H.R.'s childhood summer work does not, therefore, establish parental neglect under any of the foregoing definitions of neglect as a matter of law.

We reach a similar conclusion as to S.H.R.'s argument regarding his parents' decision to remove him from school in light of the gang threats against him and his family. Although, under California law, parents of children between the ages of 6 and 18 are generally required to send their children to public school (Ed. Code, § 48200), whether a decision to pull the child from school constitutes neglect must take into consideration the circumstances surrounding that decision. Here, S.H.R.'s declaration implies that his parents took him out of high school because of repeated threats by gang members against S.H.R.'s life. The threats were made at or near the school and, despite S.H.R.'s father's reports of the incidents to police, it appeared that the police were unwilling or unable to prevent the gangs from carrying out their threats. Under these circumstances, keeping S.H.R. from school, where he would face substantial risk of being killed, appears to have been the most reasonable and prudent action to take. Rather than neglect, the decision reflects the parents' commitment to protect S.H.R. from "harm or threatened harm to the child's health or welfare." (Pen. Code, § 11165.2.) At a minimum, the parents' actions do not constitute neglect as a matter of law.

S.H.R. also argues that his parents left him "unprotected from multiple credible threats of gang violence." The threats themselves cannot reasonably be viewed as constituting parental

18

neglect. S.H.R. suggests, however, that his parents should have done something more than report the threats to the police. Other than "follow[ing] up" with the police, however, S.H.R. does not indicate what more his parents could have done to protect him from gangs; and failing to follow up with police does not constitute neglect. Indeed, S.H.R. apparently believes that any follow-up would have been futile because, he asserts, the police are afraid to investigate complaints about gang members.

Lastly, S.H.R. argues that his parents "did not financially support" him. He points to his statements that his mother does not work, his father had "not been able to find work for a couple of years," and his "family depends mostly on [his] older sisters and [himself] to provide money." His parents' lack of employment or their partial dependence on others, however, does not, without more, constitute neglect toward S.H.R. as a matter of law. A parent can provide for a child indirectly as well as through the parent's employment income. Indeed, even an incarcerated parent may avoid a finding of neglect if the parent can arrange for the child's care while the parent is in prison. (*In re S.D.* (2002) 99 Cal.App.4th 1068, 1077.) Although S.H.R. states that his family depended in part on his siblings and himself, he does not state that his parents failed to provide him with food, shelter, clothing, or medical care.[12]

---

[12] Although SIJ status may be based on a finding that reunification is not viable because of parental "abuse," as well as "neglect, abandonment, or a similar basis," S.H.R. based his petition solely on grounds of neglect and abandonment. We do not, therefore, consider other possible grounds.

### 3. *S.H.R.'s failure to show that reunification was not viable*

Even if S.H.R. had established that his parents were guilty of neglect towards him, he was further required to show that reunification with one or both of his parents is not viable because of such neglect. (§ 155.) The trial court determined he had not made that showing. Whether we review the court's ruling under the test we applied above to the court's neglect and abandonment findings or, as S.H.R. argues, under a de novo standard, we reach the same conclusion as the trial court.

Reunification involves the child's return to the parents' custody and care. (*In re K.L.* (2012) 210 Cal.App.4th 632, 642; see *In re Welfare of D.A.M.* (Minn.Ct.App. Dec. 12, 2012, No. A12-0427) 2012 WL 6097225, p. *5 [" 'reunification' " under the SIJ law "appears to mean returning the child to successfully live with his or her parent"].) The meaning of "not viable" under the SIJ law is unsettled. Some courts and the USCIS have interpreted the phrase as requiring the petitioner to prove that reunification with his or her parents cannot occur, or is not possible. (See, e.g., *O.C.*, *supra*, 44 Cal.App.5th at pp. 82−83; *Leslie H.*, *supra*, 224 Cal.App.4th at p. 351; *In re Erick M.* (Neb. 2012) 820 N.W.2d 639, 645; *D-Y-S-C-*, USCIS Adopted Decision 2019-02 (AAO, Oct. 11, 2019) 2019 WL 5260454, p. *2; USCIS, Policy Manual (2021) Immigrants, vol. 6, pt. J, ch. 2, § A, pp. 408-409.) Some courts, however, have interpreted the phrase as requiring proof only that reunification is not practicable or workable. (See, e.g., *Lopez v. Serbellon Portillo* (Nev. 2020) 469 P.3d 181, 184; see also *J.U. v. J.C.P.C.* (D.C. 2018) 176 A.3d 136, 140 (*J.U.*) [viability connotes "common-sense practical workability"]; accord, *Kitoko v. Salomao* (Vt. 2019) 215 A.3d 698,

20

708; *Romero v. Perez* (Md.Ct.App. 2019) 205 A.3d 903, 914−915.) For purposes of our analysis, we will assume that S.H.R. was required to meet the less demanding, practical or workable standard. This standard "calls for a realistic look at the facts on the ground in the country of origin and a consideration of the entire history of the relationship between the minor and the parent in the foreign country." (*J.U.*, *supra*, 176 A.3d at p. 140.) The finding of nonviability must be made as of the present time. (*Perez v. Cuccinelli* (4th Cir. 2020) 949 F.3d 865, 874.)

The phrases, "due to" in the federal statute (8 U.S.C. § 1101(a)(27)(J)(i)) and "because of" in section 155 (§ 155, subd. (b)(1)(B)) indicate a causal connection between the parents' maltreatment and the nonviability—or practical unworkability—of reunification. (See *Leslie H.*, *supra*, 224 Cal.App.4th at p. 349 [" 'a court must find that reunification is not possible because of abuse, neglect, or abandonment' "].)

The link between the parents' maltreatment and the nonviability of reunification was addressed in *J.U.*, *supra*, 176 A.3d 136, a case S.H.R. relies on. In that case, the minor petitioning for SIJ status, grew up in El Salvador apart from his father, who "was a non-supportive and distant figure." (*Id.* at p. 142.) Although the father regularly visited the paternal grandparents' house where the child lived, he "never fed him, gave him clothes, took him to school, cared for him when he was sick, or showed him any affection. . . . The father never invited [the minor] to live with him even after discovering that [the child] had nowhere to live in El Salvador, nor did the father ever provide any financial support or assume any significant parental responsibility for making necessary day-to-day decisions regarding [the child]. All financial support came from his mother

and grandfather." (*Ibid.*, fn. omitted.) Although "the father recognized [the minor] as his son, he never helped the mother to financially care for him or helped to take care of him, and . . . the father does not have a parent-child relationship with [the minor] as he has never participated in his life or shown him love. Once [the minor] entered the United States and took up residence with his mother, [the child] . . . never had any contact with his father." (*Ibid.*) The District of Columbia Court of Appeals held that reunification was not viable due to the father's abandonment of the child. It explained that "sending a seventeen-year-old boy back to the care of a father who has never fulfilled any day-to-day role in the support, care, and supervision during the boy's lifetime cannot be a 'reunification' that is 'viable,' that is, 'practicable[,] workable.' " (*Id.* at p. 143; see also *Leslie H.*, *supra*, 224 Cal.App.4th at p. 352 [reunification with parents was not viable due to "mother's lifelong abuse" of child and "father's abandonment"].)

In contrast to *J.U.*, even if we assume that S.H.R.'s parents neglected him under our state law standards, S.H.R. presented no evidence in this case to support a finding that reunification with his parents is not presently viable "because of" such neglect. (§ 155, subd. (b)(1)(B).) The fact that S.H.R.'s parents required S.H.R. to work in agricultural fields during summers as a child until the age of 15 to help support the family does not imply that reunification is presently not viable.[13] There is nothing in

---

[13] Arguably, S.H.R. and his parents cannot "reunify" because reunification has meaning only in the context of parents and their minor children (see *In re K.L.*, *supra*, 210 Cal.App.4th at p. 642), and the 19-year-old S.H.R. is, generally, not a minor

22

S.H.R.'s declaration to suggest that if he returned to the home of his parents that his childhood experience working in the fields renders reunification with his parents unworkable. There is no evidence, for example, to suggest that he left his parents in 2018 because his parents made him work in the fields several years earlier or that his parents would attempt to compel him to resume such work upon his return home. Indeed, the fact that he stopped working in the fields when he was 15 years old and subsequently worked at a car wash indicates that his parents would not insist that he work as a farm laborer again.

Nor does S.H.R.'s parents' decision to pull him from high school to protect him from gang violence suggest that reunification with his parents is not presently viable. It appears that S.H.R.'s parents made the decision to remove him from school not to harm him in any way, but rather to protect him from harm. Even if S.H.R. disagrees with the decision, it appears from his declaration that he understands his parents' protective intentions. Thus, even if the parents' decision constituted neglect at that time, the decision would not render reunification with his parents unworkable now.

---

under the law of either California or El Salvador. (See Fam. Code, § 3901, subd. (a)(1); Código Civil [Civil Code], art. 26 (El Sal.); but see Prob. Code, § 1510.1, subd. (d) [for purposes of SIJ-related guardianship petition, "minor" includes an unmarried person 18 years of age or older and younger than 21 years of age].) If this argument is accepted, reunification is not viable as a matter of law not because of any maltreatment by the parents, but because S.H.R. is not a minor. We will assume arguendo that S.H.R.'s age is not per se an impediment to reunification for purposes of the SIJ law. (See *R.F.M. v. Nielsen* (S.D.N.Y. 2019) 365 F.Supp.3d 350, 380.)

23

The alleged failure to provide S.H.R. with financial support while he lived in El Salvador, even if it constituted neglect, does not prove that reunification is not currently viable. Although S.H.R.'s declaration states that his parents are unemployed and depend "mostly" on others for money, he does not indicate that his parents' financial situation renders reunification unworkable as a matter of law. He does not suggest that he left his parents because of a failure to support him and there is nothing in his declaration to indicate that he, as an adult, would need the level of support for a child or that he would be unable to contribute to the family's income.

It is evident from S.H.R.'s declaration that he does not desire to return to El Salvador because he is fearful of violence against him from gangs in that country, not because of any parental neglect or a purported inability to reunify with his parents. Although S.H.R.'s fear of gangs may be well-founded, that alone–absent evidence of parental neglect, abuse or abandonment—is not among the grounds for finding reunification with his parents is not viable for purposes of the SIJ law. (See 8 U.S.C. § 1101(a)(27)(J)(i); *In re Jeison P.-C.* (N.Y. App. Div. 2015) 132 A.D.3d 876, 877 [SIJ petitioner failed to establish that reunification was not viable where he left his impoverished parents in Guatemala to escape gang violence and pursue education].)

Because S.H.R. failed to show that reunification with one or both parents is not viable due to the asserted grounds of abandonment or neglect, the court did not err in denying his SIJ petition.

24

## C.    *The Order Denying the Guardianship Petition*

Amicus Public Counsel contends that the court erred in concluding that S.H.R.'s guardianship petition was rendered moot by the court's denial of the SIJ petition.  We disagree.

Probate Code section 1510.1, subdivision (a) provides: "With the consent of the proposed ward, the court may appoint a guardian of the person for an unmarried individual who is 18 years of age or older, but who has not yet attained 21 years of age, in connection with a petition to make the necessary findings regarding special immigrant juvenile status pursuant to subdivision (b) of [s]ection 155 of the Code of Civil Procedure."  In a statement accompanying the enactment of the statute, the Legislature declared its "intent . . . to give the probate court jurisdiction to appoint a guardian for a person between 18 and 21 years of age in connection with a special immigrant juvenile status petition" and "to provide an avenue for a person between 18 and 21 years of age to have a guardian of the person appointed beyond 18 years of age in conjunction with a request for the findings necessary to enable the person to petition the [USCIS] for classification as a special immigrant juvenile."  (Stats. 2015, ch. 694, § 1(b), p. 5329.)  It thus appears from the statute's plain language and the Legislature's expressed intent that the statute grants superior courts jurisdiction to appoint a guardian for unmarried individuals who are at least 18 years old and less than 21 years old when the guardianship is sought "in connection with" a SIJ petition.  (Prob. Code, § 1510.1, subd. (a)(1).)  The requirement of a "connection with" a SIJ petition indicates that the court's jurisdiction is limited; the statute does not grant courts the power to grant a guardianship under this provision in the absence of a SIJ petition.

25

Here, once the court denied the SIJ petition, there was no longer a SIJ petition with which the guardianship could be connected.  It was therefore proper for the court to dismiss the guardianship petition as moot.

## DISPOSITION

The court's orders denying appellant's petition for special immigrant juvenile findings and denying as moot appellant's petition for appointment of guardian are affirmed.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

BENDIX, J.

26